797 A.2d 201 (2002)
351 N.J. Super. 135
Mary Louise ELLIOTT-MARINE, as Administratrix Ad Prosequendum and General Administrator of the Estate of Clifford A. Elliott, deceased, Plaintiff-Appellant,
v.
Jerald V. CAMPENELLA, Jean Campenella, Gregory Campenella, Brian Campenella and Gregory Patterson, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 2002.
Decided May 20, 2002.
Kenneth R. Austin, Marlton, argued the cause for appellant (Flynn, Austin, attorneys; Mr. Austin, on the brief).
Donna L. Freidel, Pennsauken, argued the cause for respondents Gregory and Brian Campenella (Duffy & Keenan, attorneys; Ms. Freidel, on the brief).
Before Judges NEWMAN, FALL and AXELRAD.
The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
In this wrongful death action, plaintiff, Mary Louise Elliott-Marine, as Administratrix of the estate of Clifford A. Elliott, appeals the Law Division judge's denial of her motion to confirm a private arbitration award and enter judgment with prejudgment interest and costs.
The litigation arose from the death of plaintiff's twenty-one year old son, Clifford Elliott ("Elliott"), from an alcohol overdose *202 in June 1991. Elliott attended a "keg party" with his friend, defendant Gregory Patterson at the home of nineteen and twenty-one year old defendants, Brian and Gregory Campenella. The hosts' parents, Jerald and Jean Campenella, were on vacation at the time and were unaware of the party. Elliott obtained and consumed part or all of a quart bottle of vodka and was thereafter observed in the backyard of the Campenella home unconscious, in a pool of vomit, with the empty bottle of vodka lying beside him. Since the age of two, Elliott had been an insulin-dependent diabetic. Patterson drove Elliott home; in the car Elliott regained consciousness and engaged in semi-coherent conversation. Elliott declined Patterson's offer to help him up to his room, and indicated that he wanted to sit outside on the steps and smoke a cigarette. Patterson left. Early the next morning Elliott was discovered by his step-father. He was not breathing and was pronounced dead at the hospital. Post-mortem testing indicated that Elliott's blood alcohol level was .445 and that the cause of death was alcohol poisoning.
On January 29, 1993, plaintiff, as Administratrix Ad Prosequendum and General Administrator of her son's estate, filed a wrongful death action against Jerald Campenella, Jean Campenella, Gregory Campenella, and various fictitious defendants, seeking compensation based on defendants' alleged joint and several liability. On June 2, 1993, plaintiff amended her complaint to include Gregory Patterson. On September 22, 1993, defendants filed an answer and cross-claimed for contribution and indemnity. On November 9, 1994, plaintiff amended her complaint to include Brian Campenella.
On October 25, 1994, the scheduled trial was adjourned and the case was placed on the military inactive list because Gregory Patterson was serving in the armed forces. On June 3, 1997 and April 4, 2000, plaintiff's counsel filed an Offer of Judgment against defendants "in the sum of $300,000, including interest and costs." The case was re-activated and scheduled for trial on April 3, 2000.
After the case was returned to the active trial list, counsel for defendants, Gregory and Brian Campenella, raised the possibility of proceeding with an alternative dispute resolution ("ADR"). Shortly after this initial discussion of ADR, Donna L. Freidel substituted in as counsel for Gregory and Brian Campenella. Correspondence between plaintiff's counsel Kenneth Austin and Ms. Freidel through November and December 2000 resulted in an order executed by the court on December 8, 2000, consented to by Austin, Freidel, and counsel for defendant, Patterson, removing the matter from the trial list scheduled for December 11, 2000, so long as it could be "submitted to a private binding arbitration hearing." Counsel for plaintiffs and defendants, Gregory and Brian Campenella, agreed that the result of the private arbitration would be subject to a high-low range of $250,000 to $50,000, of which the arbitrator, retired Judge Gruccio, would not be advised. The parties further agreed to dismiss Jerald and Jean Campenella from the case prior to the arbitration. Counsel for co-defendant Patterson agreed to submit to the binding arbitration proceeding, without cost and without exposure toward the result.
The arbitration was held on December 14 and 18, 2000. Mary Louise Elliott-Marine, Robert Marine, Patterson, Brian Campenella and Gregory Campenella testified. Counsel also submitted briefs, expert reports, deposition testimony, medical evidence and other documentation in support of their cases. Judge Gruccio prefaced the hearing with the statement that his decision was binding except for limited *203 circumstances pursuant to N.J.S.A. 2A:24-1. Plaintiff's counsel never mentioned the issue of prejudgment interest or costs at that time.
On January 19, 2001, Judge Gruccio rendered a written decision in which he recited the facts and discussed and analyzed each party's legal position as to liability. The arbitrator then considered the expert reports of both parties regarding vocational economic data together with the testimony presented at the hearing, which he analyzed under the Green v. Bittner[1] guidelines. He concluded that Patterson had no liability, that the Campenellas were 66.67% negligent and that their negligence was a proximate cause of Elliott's death, and that Elliott was 33.33% comparatively negligent. Judge Gruccio entered a net award against Gregory and Brian Campenella in the amount of $160,000. The binding arbitration award did not mention or provide for any interest or costs above and beyond the $160,000 award.
On March 2, 2001, plaintiff moved in the Superior Court to
confirm the arbitration award pursuant to N.J.S.A. 2A:24-7 ... [and for] entry of judgment in favor of the plaintiff including costs and pre-judgment interest on this award from the date of the filing of the complaint to the entering of judgment. The plaintiff is entitled to pre-judgment interest as a matter of law per R. 4:42-11(b) and Benz v. Pires, 269 N.J.Super. 574, 636 A.2d 101 (App.Div. 1994).
In his certification, plaintiff's counsel provided several demand letters and offers for judgment dating from 1997 to early 2000, asserting that these documents evidenced plaintiff's intent to seek interest and costs if the matter proceeded further. In response, Ms. Freidel certified as follows:
5. No discussion was held, at any time, regarding the application of the Court's arbitration rules, set forth in N.J.S.A. 2A:24-8. Nor was any such understanding confirmed with the selected arbitrator Judge Philip Gruccio, or with the other parties to the action. The only clear meeting of the minds was on the point that there would be a binding high/ low in the amounts of $50,000-$250,000 which numbers were not to be communicated to the arbitrator. If there were an award of no cause, or something less than $50,000 against the Campenella defendants, the Hartford would pay a minimum of $50,000. Similarly, regardless of how high the award was, the maximum to be paid by the Hartford on behalf of defendants, Brian and Greg Campenella would be $250,000. Both parties waived their rights to a jury or bench trial and to an appeal. No discussion was made at any time of interest or costs, but the clear implication from this agreement that this was to be a private proceeding, was [that] the award would be the amount paid subject to the provisions of the high/low.
6. It was not until after the arbitration award, in the net amount of $160,000, was communicated, that plaintiff's counsel first raised the question of prejudgment interest. Similarly, the question of costs was raised for the first time after the award was entered."
7. There was no question of either party "accepting" the award as it had [been] agreed prior to the arbitration that there would be no appeal.
Although not reflected in the record on appeal, plaintiff's counsel advised us at oral argument that subsequent to his filing *204 of the motion, the $160,000 award was paid.
After oral argument on March 30, 2001, the Law Division judge rendered an oral decision and entered an order denying plaintiff's request to confirm the award, finding that the binding arbitration with a high-low was tantamount to a settlement and was not entitled to prejudgment interest and costs. According to the court:
In this situation, there is no necessityunless they refuse to pay the amount set by Judge Gruccio, there is no necessity to have an award. The case is over and done with and it is tantamount to a settlement. The settlement is we agree that we will pay and we will take whatever number the arbitrator puts on it, assuming it's between the high and the low. We agree that if he puts a number higher than the high, we'll pay the high. We'll take it. We agree that if he puts a number lower than the low, we'll take the low and we'll pay it. That's settlement.
The ... Benz v. Pires case was a high/lowthat's been cited as a high/low agreement in the context of a jury trial. Once there's a jury trial, the jury renders their verdict and the Judge enters a judgment based on the verdict. And that judgment is what carries pre-judgment interest. Were they to refuse to pay and you had to go to Court to enforce the payment and obtain the judgment that way, that might carry pre-judgment interest. But ... where the agreement is silent as to pre-judgment interest, the Court would not and should not write pre-judgment interest into the agreement of what is essentially a settlement.
Plaintiff appeals, asserting that the trial court erred as a matter of law in denying plaintiff prejudgment interest and costs on the arbitration award, and requesting that we enter judgment and award prejudgment interest and costs to the arbitration award. We reject plaintiff's arguments and affirm.
N.J.S.A. 2A:24-1 states: "A provision in a written contract to settle by arbitration a controversy ... shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract." N.J.S.A. 2A:24-2 further provides that "[t]wo or more persons by their agreement in writing may submit to arbitration a controversy existing between them at the time of the agreement.... They may also agree in writing that a judgment of a court of record, chosen by them shall be rendered upon the award made pursuant to the submission." N.J.S.A. 2A:24-7 authorizes a party to the arbitration, within three months after the award is delivered, to "commence a summary action in the court aforesaid for the confirmation of the award or for its vacation, modification or correction. Such confirmation shall be granted unless the award is vacated, modified or corrected."
The parties entered into a contract for "binding private arbitration" when their counsel executed the December 8, 2000 consent order, entered into a high-low agreement, and retained Judge Gruccio's services as an arbitrator. Counsel could have agreed to have the arbitrator determine the appropriateness, period, and amount of prejudgment interest against Gregory and Brian Campenella, and whether such interest would be included in the high-low agreement. Alternatively, counsel could have agreed that the arbitrator's damages award could be confirmed and a judgment be entered by the Superior Court. Additionally, counsel could have agreed that plaintiff would be entitled to mandatory prejudgment interest on the tort award pursuant to Rule 4:42-ll(b), or that the judge would have the discretion to *205 award prejudgment interest on the binding arbitration award. See Bak-A-Lum Corp. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 131, 351 A.2d 349 (1976) (holding that prejudgment interest may run on contract claims in accordance with equitable principles).
Counsel, however, did not expressly enter into any of these agreements, nor does the record provide a basis to imply any of these terms. The parties' agreement was silent as to prejudgment interest and costs and no one contends it was discussed by counsel off the record contemporaneous with the arbitration. The extent of counsels' written stipulation was that their clients would submit to binding private arbitration with a high-low range of $50,000 to $250,000. The record does not support plaintiff's counsel's contention that he did not agree to have the high-low figure encompass the entire award and intended only to address pain and suffering damages in the binding arbitration, while retaining his right to prejudgment interest afforded by the court rules. Plaintiff's request for costs and interest in the pleadings, correspondence to the claims adjusters, and offers of judgment sufficiently preceded and were superseded by the ADR discussions, subsequent agreement, and consent order between counsel to submit the matter to binding private arbitration with a high-low range.
We reject the argument of plaintiff's counsel that the onus was on his adversary, as part of her duty to defend the claim, to request that he dismiss the prejudgment component of his damages, absent which, his claim would remain viable. To the contrary, it was incumbent on plaintiff's counsel, in representing his client's interests, to articulate the parameters of the binding arbitration proceeding if he did not intend to resolve his entire case in the ADR forum. If there was any question in his mind as to the scope of the arbitration proceeding, plaintiff's counsel should have spoken up at the hearing when Judge Gruccio referenced N.J.S.A. 2A:24, rather than raising the issue of interest and costs almost two months after the arbitrator entered his award. It was his obligation to clearly indicate that plaintiff retained his right to proceed in the court system and that the entire matter was not being resolved in the arbitration. See Coleman v. Fiore Bros., Inc., 113 N.J. 594, 611, 552 A.2d 141 (1989) (holding that statutory claims for attorney's fees in a consumer fraud action were encompassed within the negotiated settlement because "[g]ood practice and the ordinary candor expected between attorneys dictate that ... [plaintiff's] counsel make defendants and defense counsel aware of the[ ] conditions for settlement of any pending litigation.").
This is particularly true in view of the purpose of, and public policy behind, arbitrationto promote and encourage a voluntary, alternative method of resolving all disputes in a given legal controversy in a single forum, in an efficient, expeditious, relatively inexpensive, and less formal manner that relieves our overburdened judicial resources. See Barcon Assocs., Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 210, 430 A.2d 214 (1981) (discussing arbitration in the context of commercial disputes); see also Riding v. Towne Mills Craft Ctr., Inc., 166 N.J. 222, 226, 764 A.2d 1004 (2001) (discussing non-binding arbitration of age discrimination claim under Law Against Discrimination); Habick v. Liberty Mut. Fire Ins. Co., 320 N.J.Super. 244, 253, 727 A.2d 51 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999) (discussing PIP arbitration).
By withdrawing the case from the trial list and submitting the dispute to a binding arbitration forum, absent an agreement to the contrary, plaintiff removed this matter *206 from the Superior Court system and essentially settled the case. See Benz v. Pires, 269 N.J.Super. 574, 579, 636 A.2d 101 (App.Div.1994) (recognizing that, absent an agreement to the contrary, prejudgment interest shall be added to a jury verdict award in a negligence action up to the ceiling of a high-low agreement, but that prejudgment interest would ordinarily not be applied to a settlement).
The only question remaining was the exact amount between $50,000 and $250,000 that would be paid to plaintiff. Based on the record, neither counsel could have reasonably expected that there would be further proceedings in another forum. The matter was handled privately with the parties paying an arbitrator rather than submitting the claim to the court for a bench or jury trial with a high-low agreement, which were certainly options at the time. Certainty of result, a reduction of legal and expert fees and trial costs that would have been incurred in an extended trial, the avoidance of appeal in a matter that involved primarily legal determinations of duty, and the avoidance by both parties of an unfavorable result were important considerations weighing in favor of ADR. Both sides gave up certain rights and received certain benefits when they agreed to a binding private arbitration with a high-low range; plaintiff avoided the potential for a no-cause and defendants avoided a possible excess verdict. Having made the agreement, plaintiff's counsel cannot now seek to change or add to the terms upon which he agreed.
Affirmed.
NOTES
[1] 85 N.J. 1, 424 A.2d 210 (1980) (setting forth the legal analysis for damages to be awarded when parents sue for the wrongful death of their child).