**Andrew T. LaRUE, Jr., Appellant,**

v.

**Richard W. McGUIRE and Clementina McGuire, Individually and as Husband and Wife.**

Superior Court of Pennsylvania.

Argued May 10, 2005.
Filed Oct. 14, 2005.

Lee D. Rockafellos, Morrisville, for appellant.

Lisa G. Faden, Blue Bell, for appellee.

BEFORE: FORD ELLIOTT, JOYCE, and MONTEMURO,* JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 In this case of first impression, we are asked to decide the interplay between two Rules of Civil Procedure: Rule 238, relating to damages for delay; and Rule 1311.1, allowing parties to stipulate to a limit of $15,000 in damages. We vacate

the judgment and remand for computation of delay damages.[1]

¶ 2 The facts of this case are not in dispute in this appeal. Appellant ("lessee") claimed that on March 4, 2000, he tripped over a loose piece of carpet and fell while carrying his computer during the process of moving out of his apartment. As a result, lessee filed an action sounding in negligence on February 27, 2001, against appellees ("lessors"), claiming he suffered serious personal injury as a result of the fall. In his complaint, lessee claimed damages in excess of $50,000 and requested a jury trial. At some time between February 2001 and November 2003, the case was moved to the compulsory arbitration list. On November 25, 2003, a panel of arbitrators entered an award in favor of lessors. (R. at 12.)

¶ 3 Lessee filed an appeal from the award of arbitrators on December 16, 2003 and the case was listed for trial. (R. at 13–15.) On February 27, 2004, the court entered an order requiring the parties to proceed with settlement negotiations as part of their trial preparation. (R. at 15.) A similar order dated April 2, 2004 again required the parties to engage in settlement discussions. (R. at 16.) Again on May 14, 2004, the court ordered the parties to discuss settlement of the case. (R. at 17.) According to lessee, however, lessors did not extend a single offer to settle from the time he filed his complaint until the time of trial, on June 17 and 18, 2004.

¶ 4 Although it does not appear in the record, the parties apparently entered into a written stipulation that if the jury re-

---

\* Retired Justice assigned to Superior Court.

1. Appellant actually filed his notice of appeal from the October 22, 2004 order denying his motion for delay damages, "an order which is generally interlocutory and not appealable unless reduced to judgment." *Jones v. Rivera,*

866 A.2d 1148, 1149 n. 1 (Pa.Super.2005) (citation omitted). As in *Jones,* however, judgment was subsequently entered; thus, as in *Jones,* "we will consider the appeal filed after the entry of judgment." *Id.* (citations omitted).

turned a verdict in favor of lessee, he would limit the amount of damages he could receive to $15,000, in exchange for which lessee would be able to enter his medical reports without the expense of testimony to authenticate those reports, pursuant to Pa.R.Civ.P. 1311.1, 42 Pa. C.S.A.[2] That Rule provides in relevant part:

### Rule 1311.1. Procedure on Appeal. Admission of Documentary Evidence

(a) The plaintiff may stipulate to $15,000.00 as the maximum amount of damages recoverable upon the trial of an appeal from the award of arbitrators. The stipulation shall be filed and served upon every other party at least thirty days from the date the appeal is first listed for trial.

(b) If the plaintiff has filed and served a stipulation as provided in subdivision (a), any party may offer at trial the documents set forth in Rule 1305(b)(1).[3] The documents offered shall be admitted if the party offering them has provided written notice to every other party of the intention to offer the documents at trial at least twenty days from the date the appeal is first listed for trial. The written notice shall be accompanied by a copy of each document to be offered.

. . . .

Pa.R.Civ.P. 1311.1, 42 Pa.C.S.A.

¶ 5 Following the trial by jury in this case, the jury, which was properly not informed of the stipulation, entered a verdict in favor of lessee in the amount of $600,000. The trial court molded the verdict to reflect the $15,000 maximum to which the parties stipulated, after which lessee filed a motion for delay damages. (R. at 18.) Rule 238, pertinent to delay damages, provides:

### Rule 238. Damages for Delay in Actions for Bodily Injury, Death or Property Damage

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa.C.S. § 7361, and shall become part of the verdict, decision or award.

Pa.R.Civ.P. 238(a)(1), 42 Pa.C.S.A.

¶ 6 On October 22, 2004, the court denied the motion for delay damages, and on November 16, 2004, lessee filed a notice of appeal. Judgment was entered on the $15,000 verdict on December 22, 2004, at which time a previous judgment, entered on the $600,000 verdict, was vacated.

¶ 7 Lessee raises the following issues on appeal:

---

**2.** Lessee does not dispute the existence of the stipulation in his brief nor did he question the reduction in the judgment in his favor from $600,000 to $15,000, as reflected on the docket.

**3.** Rule 1305(b)(1) allows for the admission of certain documents into evidence at the arbitration hearing providing at least twenty days'

notice of the intention to offer them is given to every other party accompanied by a copy of each document to be offered. Included among those documents, and relevant to this appeal, are "(iii) records and reports of hospitals and licensed health care providers[ .]" Pa.R.Civ.P. 1305(b)(1)(iii), 42 Pa.C.S.A.

1. Is Pa.R.C[iv].P. 238 regarding delay damages to be calculated upon the jury verdict of $600,000.00?
2. Does Pa.R.C[iv].P. 1311.1 have an [e]ffect on the jury verdict under Pa.R.C[iv].P. 238, where the Defendants never made a written offer of settlement and, at the time of trial, the offer remained zero?

Appellant's brief at 2.

¶ 8 Because questions concerning interpretation of the Rules of Civil Procedure raise questions of law, "we are not constrained by the determination of the trial court; our standard of review is *de novo.*" *Jones v. Rivera,* 866 A.2d 1148, 1150 (Pa.Super.2005). Additionally, Pa.R.Civ.P. 127, 42 Pa.C.S.A., governs our construction and interpretation of the Rules. Rule 127 provides:

**Rule 127. Construction of Rules. Intent of Supreme Court Controls**

(a) The object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court.

(b) Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the

contemporaneous history of the rule; and (8) the practice followed under the rule.

*Id. See also Willits v. Fryer,* 734 A.2d 425, 427 (Pa.Super.1999) (setting forth the provisions of the Rule prior to interpreting the breadth and meaning of the definition of "consumer credit transaction" under Rule 2950).

¶ 9 While there is so far no case law in Pennsylvania interpreting the purpose and parameters of Rule 1311.1, its intent is readily discernible from its language and from its inclusion within the section of the Rules relating to compulsory arbitration: "The overall objective of compulsory arbitration is the expeditious disposition of pending litigation." *Monahan v. McGrath,* 431 Pa.Super. 501, 636 A.2d 1197, 1199 (1994) (citation omitted). "Compulsory arbitration provides the parties with a more expeditious and inexpensive alternative to trial." *Id.,* citing 3 P.L.E. Arbitration § 5.

¶ 10 Rule 1311.1, addressing introduction of evidence on appeal from the award of arbitrators, contributes to the overall goal of compulsory arbitration by reducing the time and costs associated with calling witnesses to authenticate documents that are introduced into evidence at the trial *de novo.* In exchange for this cost-saving benefit, plaintiff agrees to limit damages to $15,000, regardless of the jury's verdict in his or her favor.

¶ 11 The question, then, is whether that $15,000 limit includes a limit on any delay damages to which the plaintiff might otherwise be entitled by virtue of the defendant's failure to present a written offer to settle. Thus, the first issue we must decide, although lessee does not specifically raise it, is whether the trial court erred when it refused to award *any* delay dam-

ages in this case.[4] To answer that question, we turn to our supreme court's analysis in a different context for guidance.

¶ 12 In *Allen v. Mellinger*, 567 Pa. 1, 784 A.2d 762 (2001), our supreme court addressed the interplay between Rule 238 and the statutory cap of $250,000 imposed by § 8528(b) of the Sovereign Immunity Act, 42 Pa.C.S.A. §§ 8521–8553, when a Commonwealth party is a defendant.

¶ 13 The question in *Allen,* and in *Woods v. Commonwealth, Dept. of Transportation*, 531 Pa. 295, 612 A.2d 970 (1992), *overruled by Allen v. Mellinger*, 567 Pa. 1, 784 A.2d 762 (2001), which the *Allen* court overruled, was the basis on which delay damages were to be calculated: the total award of the jury or the statutory cap of $250,000 applicable to Commonwealth defendants; there was no question that plaintiff was entitled to delay damages, even where those damages would increase the Commonwealth's liability beyond the $250,000 cap. According to the majority in *Allen,* Rule 238's purpose is to encourage settlements. *Allen, supra* at 11, 784 A.2d at 768.

¶ 14 More specifically, as then Justice, now Chief Justice, Cappy observed in a concurring and dissenting opinion in *Allen,* "Rule 238 seeks to encourage settlement and achieve a prompt disposition of cases so as to unclutter the courts' dockets. The Rule also serves to compensate a plaintiff for the delay in receiving funds rightfully due to him, but which remain in a defendant's hands during the litigation process." *Allen, supra* at 19, 784 A.2d at 772–773 (Cappy, J., concurring and dissenting) (citation omitted). As then-Justice Cappy continued, "In essence, Rule 238 delay damages are 'an extension of the compensatory damages necessary to make a plaintiff whole.'" *Id.* at 19, 784 A.2d at 773, quoting *Colodonato v. Consolidated Rail Corp.* 504 Pa. 80, 87, 470 A.2d 475, 479 (1983) (other citation omitted).

¶ 15 Thus, in *Allen,* the parties did not dispute that despite the statutory cap the Sovereign Immunity Act requires, a plaintiff such as Elizabeth Allen, who waited to be compensated for her severe injuries for seven years from the time she filed her complaint until the jury returned a verdict, was entitled to delay damages from the Commonwealth defendant even where the Commonwealth's liability would exceed the statutory cap as a result.[5]

**4.** Lessee raised the issue in his Rule 1925(b) statement and raises it by logical inference in his brief on appeal; therefore, we find he did not waive the issue. *See* Pa.R.App.P. 2116(a), 42 Pa.C.S.A. (providing this court may not consider any point not set forth in the statement of questions *or suggested thereby* ) (emphasis added).

**5.** In *Allen,* plaintiff Elizabeth Allen was injured in a two-car motor vehicle accident and sued the driver of the other vehicle and the Department of Transportation. Neither defendant presented a written offer to settle. Following trial, the jury apportioned twenty per cent of the liability to plaintiff, 40 per cent to the driver of the other vehicle, and 40 per cent to PennDOT, and awarded total monetary damages of $2,883,366. *Allen, supra* at 4–5, 784 A.2d at 763–764.

Plaintiff then filed a motion for delay damages in the amount of $1,430,077.07. Plaintiff settled with the driver of the other vehicle for the $300,000 limits of his motor vehicle liability insurance policy, in exchange for which plaintiff agreed not to execute against that driver's personal assets to satisfy the judgment. The agreement specifically provided, however, that it did not affect the amount of the verdict for which the Department would be liable, or release the other driver from liability to the Department for contribution with respect to either the verdict or delay damages.

After denying PennDOT's post-trial motions, the trial court molded the verdict to conform to the statutory cap of $250,000 against PennDOT and granted Allen's motion for delay damages, calculating the amount of delay damages against PennDOT based upon

■ ¶ 16 The trial court in this case found, nonetheless, that the parties' stipulation to limit damages to $15,000 pursuant to Rule 1311.1 precluded lessee from receiving *any* amount in excess of $15,000 from lessors; therefore, because lessee received $15,000 in compensatory damages as a result of the jury's verdict of $600,000, he could not collect any delay damages. (Trial court opinion, 2/10/05 at 6.)

¶ 17 The trial court's analysis did not take into account, however, analogous situations in which, through either the specific language of a Rule or a judicial interpretation of the interplay between Rule 238 and a statute, as in *Allen*, delay damages have been permitted despite the existence of a cap on compensatory damages. For example, Rule 238(d) provides, "The damages for delay shall not be included in determining whether the amount in controversy is within the jurisdiction of the arbitrators." Pa.R.Civ.P. 238(d)(2), 42 Pa. C.S.A. The Rule therefore clearly contemplates, by logical inference, that a plaintiff who is awarded the statutory maximum for an arbitration award may collect an additional amount for delay damages if he or she is entitled thereto.

■ ¶ 18 The policy reasons behind allowing delay damages in connection with a cap on compensatory damages are clear. A plaintiff may be limited in the amount of compensatory damages he or she may receive for a variety of reasons. In the case of the Sovereign Immunity Act, "sovereign immunity is 'a bar to an action against Commonwealth parties that has been waived in specified circumstances to the

extent set forth in [the subchapter] and within the limits set forth in section 8528 (relating to limitations on damages).'" *Allen, supra* at 9, 784 A.2d at 766, quoting 42 Pa.C.S.A. § 8522(a) (emphasis deleted). In the case of the Compulsory Arbitration Act, 42 Pa.C.S.A. § 7361, parties are compelled to arbitrate claims below a fixed dollar amount in order to expedite resolution of disputes, reduce the costs of their resolution, and unclutter the courts' dockets. *See Monahan*, 636 A.2d at 1199. Pursuant to Rule 1311.1, applicable to appeals from a compulsory arbitration award, the plaintiff may elect to limit his or her damages in a trial *de novo* from that award for precisely the same reasons.

¶ 19 Nothing in any of these scenarios eliminates the policy concerns motivating Rule 238, set forth *supra*, which our supreme court promulgated to motivate defendants to make serious written offers to settle or to face the imposition of additional expenses in the event the plaintiff receives a verdict in his or her favor. In fact, Rule 238, which the supreme court promulgated to encourage settlement of disputes, and Rule 1311.1, which that court adopted to expedite less expensive resolution of disputes, both address some of the same policy concerns; reducing time-and-expense-consuming litigation that siphons off scarce judicial resources and drains plaintiffs' pockets. Just as neither the Sovereign Immunity Act nor the Compulsory Arbitration Act eliminates the risk of delay damages, so too, Rule 1311.1 does not shield a defendant from the conse-

---

its 40 per cent liability rather than on the entire $2.9 million verdict.

The trial court acknowledged the supreme court's decision in *Woods v. Commonwealth, Dept. of Transportation*, 531 Pa. 295, 612 A.2d 970 (1992), *overruled by Allen v. Mellinger*, 567 Pa. 1, 784 A.2d 762 (2001), holding that delay damages against a Commonwealth par-

ty are to be calculated on the basis of the entire verdict rather than on the statutory cap. However, the trial court ruled that PennDOT was not jointly and severally liable based on a 1991 Commonwealth court decision. *Allen, supra* at 5–6, 784 A.2d at 764. The Commonwealth court affirmed.

quences of his or her failure to consider settling the case.

■ ¶ 20 Having found trial court error in denying lessee any delay damages, the next issue we must decide is on what basis those damages are to be calculated; the jury's verdict, as lessee argues in this case, or the stipulated award of $15,000. We turn again to *Allen, supra* for guidance. The *Allen* court was asked to decide two issues: whether a Commonwealth defendant can be held jointly and severally liable for delay damages, and whether delay damages are to be calculated against a Commonwealth defendant based on the jury's verdict or the statutory cap. Only the second issue is relevant herein.

¶ 21 As the *Allen* court observed, Rule 238 specifically provides that " 'damages for delay shall be added *to the amount of compensatory damages awarded against each defendant or additional defendant* found liable to the plaintiff in the verdict of a jury … or in the award of arbitrators … and shall become part of the verdict, decision or award.' " *Id.* at 10–11, 784 A.2d at 767, quoting Rule 238 (emphasis in *Allen*). The *Allen* court took the opportunity that case presented to overrule *Woods, supra,* the case upon which lessee primarily relies herein. (*See* appellant's brief at 7–10.)

¶ 22 In *Woods, supra,* the supreme court held that delay damages against a Commonwealth defendant were to be calculated based upon the jury's verdict of $1.5 million, not the statutory cap of $250,000; therefore the *Woods* court reversed the Commonwealth court and found that Woods was entitled to $622,386.95 in delay damages, not the $103,731.15 the trial court included in the molded verdict. *Woods, supra* at 296, 612 A.2d at 970. In contrast, the *Allen* court held that "delay damages recoverable from Commonwealth parties are limited to those calculated based upon the statutory cap." *Allen, supra* at 12–13, 784 A.2d at 768–769.

¶ 23 In overruling *Woods,* the *Allen* court examined the language of Rule 238, set forth *supra;* and concluded that the *Woods* court ignored the emphasized language, *supra,* and focused instead on the following language when it "declared that the Rule provides that delay damages shall be added to the "verdict of the jury … decision of the court … or award of arbitrators … and shall become part of the verdict, decision or award." ' " *Allen, supra* at 10–11, 784 A.2d at 767, quoting *Woods, supra* at 298, 612 A.2d at 971, quoting Rule 238. Thus, according to *Allen,* the *Woods* court incorrectly concluded that that isolated phrase in the Rule " 'was indicative of [our supreme court's] intent to have damages apply to the verdict or award itself, which represents the actual factfinder's assessment of the plaintiff's damage, as opposed to the amount the plaintiff is legally entitled to recover.' " *Allen, supra* at 10, 784 A.2d at 767, quoting *Woods, supra* at 299, 612 A.2d at 972.

¶ 24 As the *Allen* court opined, "The difference in meaning is readily apparent and all the more critical because the next step of the *Woods* analysis characterized the 'verdict or award' as representing the factfinder's assessment of the plaintiff's damage and contrasted it with the amount the plaintiff is legally entitled to recover." *Id.* at 11, 784 A.2d at 767. Continuing, the *Allen* court explained, "The *Woods* opinion is similarly inadequate in its analysis of the purposes underlying Rule 238." *Id.* at 11, 784 A.2d at 768. As the *Allen* court also observed, "With respect to the rule's purpose of compensating the plaintiff for delay in receiving his or her recovery, it defies reason to suggest that the basis for calculating such compensation could be anything other than the amount the Commonwealth party could actually be respon-

sible for paying to the plaintiff." *Id.* Thus, the *Allen* court reasoned, "Since a plaintiff's compensatory damages can never exceed the statutory cap, there can be no delay in receiving amounts in excess of that cap. And if there is no delay, the stated justification for compensating the plaintiff with delay damages is illusory." *Id.* Concluding, the *Allen* court opined, "Simply put, the hardships which may befall plaintiffs who seek damages against Commonwealth parties occur as a direct consequence of the statutory limitations upon damages, which have been upheld against constitutional challenge as within the province of the General Assembly." *Id.*, citing *Lyles v. Commonwealth, Dep't. of Transp.*, 512 Pa. 322, 325, 516 A.2d 701, 703 (1986).

¶ 25 Lessee argues, however, that the facts of this case are distinguishable from *Allen, supra,* and are controlled by a part of the *Woods* court's analysis which, according to lessee, the *Allen* court did not overrule. The *Woods* court opined that computing delay damages based solely on the statutory cap would not only remove the incentive for a Commonwealth agency to seek a settlement of a major suit, but "there would be a distinct disincentive since the delay damages would be based upon a predictable constant and there would be no unknown which would motivate the Commonwealth to discuss settlement." *Woods, supra* at 300, 612 A.2d at 972. According to the *Woods* court, "The same disincentive would encourage the prolonging of litigation as well as the filing of appeals." *Id.* "Additionally, the plaintiff who statutorily has already been denied the full compensation due him or her would be once again deprived of money to which he or she would be otherwise entitled, with only a minimum sanction being imposed on the defendant." *Id.*

¶ 26 According to lessee, the *Allen* court disavowed this part of the *Woods* court's analysis only to the extent the *Woods* court "treated the Commonwealth party the same as any other party." *Allen, supra* at 12, 784 A.2d at 768. Lessee therefore argues that the *Allen* court's abrogation of *Woods* resulted from the *Woods* court's failure to recognize that "the absence of an 'unknown' originates in and cannot be separated from the statutory cap." *Id.* According to *Allen,* "the *Woods* rationale allow[ed] the Court to create an uncertainty of outcome to motivate settlement where no uncertainty otherwise exists." *Id.* As the *Allen* court emphasized and as lessee argues:

> ***This is far different from channeling the uncertainty of outcome that exists in the case of private litigants not subject to limitations on liability.*** In the latter situation, the procedural rule may be said to have only a collateral effect on substantive rights and duties. In the former situation, the effect is plainly more than collateral and thus exceeds the bounds of our rulemaking authority.

*Id.* (emphasis added).

¶ 27 We disagree with lessee that there is a meaningful distinction between the scenario in *Allen* and the facts of this case, and therefore find that *Allen* controls. We recognize that in *Allen,* a statutory enactment imposed the limitation on the Commonwealth's liability, whereas in this case, lessee voluntarily agreed to the limitation on lessors' liability pursuant to Rule 1311.1, in order to gain the benefit of reduced expenditures. Nonetheless, the effect of lessee's voluntary choice is that he is not a "private litigant[ ] not subject to limitations on liability[,]" the distinction the *Allen* court emphasized. *Allen, supra* at 12, 784 A.2d at 768.

¶ 28 We therefore find that because lessee's compensatory damages could not, by his own choice, exceed the $15,000 limit to which he agreed, "there can be no delay in receiving amounts in excess of that cap. And if there is no delay, the stated justification for compensating the plaintiff with delay damages is illusory." *Id.* at 11, 784 A.2d at 768. Thus, we hold that the basis upon which the trial court is to calculate delay damages when a plaintiff opts to limit his or her compensatory damages to $15,000 pursuant to Rule 1311.1 is the $15,000 cap to which the plaintiff has agreed.

¶ 29 For all of the foregoing reasons, we vacate the judgment and remand with instructions to the trial court to mold the verdict to reflect delay damages based upon lessee's $15,000 molded verdict.

¶ 30 Judgment vacated; case remanded with instructions; jurisdiction relinquished.