Douglas L. THOMPSON, Appellant

v.

T.J. WHIPPLE CONSTRUCTION
COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 18, 2008.

Filed March 30, 2009.

Reargument Denied May 29, 2009.

_____

Todd Berkey, Pittsburgh, for appellant.

Paul T. Grater, Pittsburgh, for appellee.

BEFORE: BOWES, FREEDBERG and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 Douglas L. Thompson appeals from the January 17, 2008 order of the Court of Common Pleas of Erie County denying his petition for delay damages on a verdict for injuries he suffered as a result of the negligence of Appellee, T.J. Whipple Construction Company ("Whipple"). We affirm.

¶ 2 The facts of the case are not in dispute. Appellant was injured while carrying out his duties as an employee of Va Tech America Corp. d/b/a Steel Related Technology. In his complaint, Appellant contended the incident occurred as a result of the negligence of one or more agents, officers, or employees of Whipple.

¶ 3 On August 17, 2007, prior to the commencement of trial, Appellant's counsel and Appellee's insurer, Selective Insurance Company ("Selective"), entered into a high/low agreement ("Agreement"). A high/low agreement is "a settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of trial." *Black's Law Dictionary*, 8th ed. (2004); *see also Power v. Tomarchio*, 701 A.2d 1371 (Pa.Super.1997) (high/low agreement defining floor and ceiling of potential recovery constitutes a settlement).

¶ 4 The instant Agreement, initiated through telephone conversation, was memorialized and finalized by exchange of correspondence between Appellant's counsel and a litigation specialist for Selective prior to jury selection. The first letter, dated August 17, 2007, from Selective, provides in pertinent part:

¶ 5 This letter will confirm our telephone conversation from today.

As we discussed, we are willing to enter into a high/low agreement, prior to trial, with the high being $1,000,000 and the low $250,000. You indicated you needed to discuss these parameters with Mr. Thompson and did not think you could get back to me today with an answer. Therefore, you were going to discuss further with Paul Grater [Appellee's counsel] on Monday morning.

Defendant–Appellee Letter, 8/17/07, at 1 (Defendant–Appellee Answer to Petition for Delay Damages, Exhibit A).

¶ 6 Appellant's counsel wrote the second letter that was hand delivered to Appellee on August 20, 2007. It states, in pertinent part:

This will confirm that my client has agreed to accept Selective Insurance Company's offer of a high/low agreement. The high will be $1,000,000 and the low will be $250,000. If the jury should award more than $1,000,000 then Mr. Thompson would receive $1,000,000. And if the jury should award less than $250,000, or it should be a defense verdict, Mr. Thompson would receive $250,000.

Plaintiff–Appellant Letter, 8/20/07, at 1 (Defendant–Appellee Answer to Petition for Delay Damages, Exhibit B).

¶ 7 Trial commenced on August 20, 2007. On August 24, 2007, the jury returned a verdict for Appellant in the amount of $1,071,041.67, which was reduced to $1,000,000 in accordance with the Agreement. Appellant thereafter filed a petition for delay damages in the amount of $84,847.04 pursuant to Pa.R.C.P. 238.[1]

1. Rule 238 provides that in an action for monetary relief for, *inter alia,* bodily harm, delay damages shall be added to the amount of compensatory damages awarded against each defendant, and shall become part of the verdict.

Whipple filed an answer opposing delay damages. On January 17, 2008, following a hearing on the issue, the trial court denied Appellant's petition for delay damages based upon the Agreement. This timely notice of appeal followed.

¶ 8 Appellant raises the following issue of first impression:

1. Whether the trial court erred in denying Appellant's petition for delay damages on the basis that recovery of delay damages was barred by a high/low agreement entered into between Appellant and Appellee's insurance company.

Appellant's brief at 4.

■■■ ¶ 9 To the extent we must analyze the trial court's denial of delay damages and applicability of the rule, "[w]e review ... for an abuse of discretion, and we will not reverse a trial court's decision regarding imposition of delay damages absent such an abuse." *Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 794 (Pa.Super.2006). Concurrently, to the extent we must interpret Pa.R.C.P. 238, which involves questions of law, "we are not constrained by the determination of the trial court; our standard of review is *de novo*." *Jones v. Rivera*, 866 A.2d 1148, 1150 (Pa.Super.2005). Further, Pa. R.C.P. 127 governs our construction and interpretation of rules of court:

**Rule 127. Construction of Rules. Intent of the Supreme Court Controls**

(a) The object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court.

(b) Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

¶ 10 Appellant contends that the trial court's decision to cap the delay damages pursuant to the Agreement is inconsistent with both established precedent of the appellate courts of this Commonwealth and Pa.R.C.P. 238. We disagree.

¶ 11 Pa.R.C.P. 238 provides as follows, in relevant part (second emphasis added):

**Rule 238. Damages for Delay in Actions for Bodily Injury, Death or Property Damage**

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, ... **and shall become part of the verdict, decision or award.**

¶ 12 The Pennsylvania Supreme Court, in addressing the constitutionality of Rule 238, discussed the historical relevance and purpose of the rule in *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147, 154 (1981):

[Pa.R.C.P.] 238 clearly reflects a primary desire to encourage pre-trial settlement. By tolling the running of in-

terest, this provision demonstrates the prominent goal of fostering early settlement. Undeniably, this rule serves to compensate the plaintiff for inability to utilize funds rightfully due him, but the basic aim of the rule is to alleviate delay in the disposition of cases, thereby lessoning congestion in the courts.

¶ 13 This Court expanded this interpretation in *Berry v. Anderson,* 348 Pa.Super. 618, 502 A.2d 717, 720 (1986), where we noted that defendants "are given an opportunity to protect themselves from exposure to prejudgment interest by making a reasonable offer of settlement in good faith and in a timely fashion."

¶ 14 Pennsylvania courts have long recognized high/low agreements as both contractual agreements and as a type of settlement. *Miller v. Ginsberg,* 874 A.2d 93 (Pa.Super.2005). Settlement agreements "are regarded as contracts and must be considered pursuant to general rules of contract interpretation." *Id.* at 99 (quoting *Friia v. Friia,* 780 A.2d 664, 668 (Pa.Super.2001)). In accordance with Rule 238, as noted *supra,* any award of delay damages becomes a part of the verdict and award, merging the amounts into one settlement. The enforcement of a high/low agreement as a settlement thus creates a conflict with the award of further monetary damages.

¶ 15 There are no Pennsylvania cases that are precisely on point. Therefore, we have examined a variety of sources, both within and without our jurisdiction. We begin with the case, though not binding on this Court, upon which the instant trial court relied. In *Cerino v. Kaduk,* 55 Pa. D. & C.4th 115 (Northampton Co.2000), prior to trial, the parties entered into a high/low agreement with amended limits set at $450,000 and $100,000, respectively. The agreement was documented in two letters and properly presented to the court. The trial resulted in a defense verdict, and the defendants thereafter filed a bill of costs for various trial expenses. *Id.* The plaintiffs objected to the bill and requested sanctions against the defendants for filing the bill.

¶ 16 The letters documenting the high/low agreement contained language that expressed both parties' acquiescence to refrain from appealing the verdict and their agreement that delay damages would not exceed the $450,000 maximum. The plaintiffs appealed and asserted that the award of costs to the defendants equaled a reduction of their $100,000 award and "partially deprive[d] plaintiffs of the fruits of this contract." *Id.* at 119. The defendants argued that the agreement placed minimum and maximum levels on the verdict only, but costs remained a separate issue.

¶ 17 The common pleas court noted, "It is well-established that enforceability of settlement agreements is determined according to the principles of contract law." *Id.* at 120 (quoting *McDonnell v. Ford Motor Company,* 434 Pa.Super. 439, 643 A.2d 1102, 1105 (1994)). The language of the agreement therein was clear; the plaintiffs were to receive no less than $100,000 and no more than $450,000. "Allowing defendants to recover costs would defeat the plain meaning of the agreement by reducing plaintiffs' recovery to less than $100,000." *Cerino v. Kaduk, supra* at 121. Thus, the common pleas court held that the "language of the high/low agreement is clear in that the plaintiffs are to receive no less than $100,000 as a result of the settlement. An award of costs to the defendants would contradict the plain meaning of the agreement by diminishing plaintiffs' recovery and, therefore, [it] cannot be permitted." *Id.* at 123.

¶ 18 In dismissing applicability of *Cerino v. Kaduk, supra,* Appellant suggests that

Pennsylvania courts have permitted the recovery of delay damages over and above imposed limitations on damages in the past, citing both *Allen v. Mellinger,* 567 Pa. 1, 784 A.2d 762 (2001), and *LaRue v. McGuire,* 885 A.2d 549 (Pa.Super.2005), in support. Appellant theorizes that by denying delay damages on the basis of a voluntary cap, the trial court's ruling herein was inconsistent with the precedent of this Commonwealth. Through both the language of the Agreement itself and the negotiations to achieve it, Appellant avers that it was not the parties' intent to encompass delay damages within the Agreement's parameters, allowing for recovery above the stipulated agreement cap.

¶ 19 In *Allen v. Mellinger, supra,* our Supreme Court ruled on the disbursement of delay damages and held:

> As a general precept, Rule 238 damages awarded against all defendants in a negligence action are properly aggregated with the verdict such that the defendants are jointly and severally liable for the aggregated delay damages. The fact that delay damages under Rule 238 may be calculated in the first instance on an individualized basis before being aggregated with the general liability verdict does not alter the analysis.

*Id.* at 766. That, however, was not the end of the inquiry therein, as *Allen* involved applicability of Rule 238 to the recovery of damages against a Commonwealth entity under the Sovereign Immunity Act, 42 Pa. C.S. § 8521 *et seq.* The question before the Court was whether a calculation of delay damages was applicable to an entire verdict rendered against the Commonwealth or to only that portion of the verdict to which the Commonwealth's liability was limited by statute, which was $250,000. Our Supreme Court reasoned that since

the Commonwealth could not be liable for a sum beyond the $250,000 statutory cap, a plaintiff would have no reason to anticipate either a recovery greater than that amount nor recovery of delay damages on any verdict rendered in excess of that statutory cap. Thus, the Court held that delay damages would be applied only to the statutorily-imposed liability limit of $250,000 and not to any portion of a verdict rendered against the Commonwealth beyond that amount.

¶ 20 The *Allen* Court stressed that the Sovereign Immunity Act created an unusual relationship of "rights and duties between plaintiffs and the Commonwealth parties" that did not exist "in the case of private litigants not subject to limitations on liability." *Id.* at 768. The interplay of the Sovereign Immunity Act with Pa. R.C.P. 238 created a unique scenario not applicable here, where the parties were not bound by statutorily-imposed limits on recovery. The instant parties were free to agree to limits on recovery or not; **they** defined the parameters of their liability or recovery without restraint.

¶ 21 Appellant also relies upon *LaRue v. McGuire, supra,* where the lessee-plaintiff, who tripped on a loose piece of carpet and fell, filed a negligence action against the lessor-defendants. The case was moved to compulsory arbitration where a panel of arbitrators entered an award in favor of the lessor-defendants. The plaintiff filed an appeal and the case was listed for trial. The parties then entered into a written agreement that stipulated in the event of a verdict in favor of the plaintiff, any award would be limited to $15,000 in exchange for the plaintiff's ability to offer medical records at trial without the burdensome cost of obtaining a witness to authenticate them, pursuant to Pa.R.C.P. 1311.1.[2] *Id.* at

---

**2.** Rule 1311.1 was amended in 2006 to reflect

a maximum damage amount of $25,000. At

552. A molded verdict was entered for the plaintiff in the amount of $15,000; the plaintiff filed a motion for delay damages, which the trial court denied, and the plaintiff appealed. In that case of first impression examining the interplay between Pa. R.C.P. 238 and Pa.R.C.P. 1311.1, we held that the capped amount on damages did not necessarily preclude the award of delay damages, but any amount of delay damages awarded must be calculated on the $15,000 cap and not on the amount awarded by the jury.

¶ 22 The stipulation in *LaRue,* while it may be characterized as imposing a cap on damages, is not comparable to a negotiated settlement agreement as exists in the case *sub judice.* As noted by Appellee, the unilateral decision by the *LaRue* plaintiff to take advantage of a procedural device designed to expedite the admissibility of evidence in an arbitration case "is hardly comparable to a negotiated settlement reached in contemplation of the maximum upper limits of available insurance coverage." Appellee's brief at 6. An examination of case law in other jurisdictions supports Appellee's position.

¶ 23 In *Benz v. Pires,* 269 N.J.Super. 574, 636 A.2d 101 (1994), the plaintiff in a negligence action sought to add prejudgment interest to a judgment obtained through a high/low agreement. The high/low agreement contained no language regarding prejudgment interest and designated the financial limitations as $62,500 and $45,000, respectively. Neither party contended that prejudgment interest was ever discussed. The jury exonerated the

the time of the *LaRue* verdict, the maximum damage amount was set at $15,000. Rule 1311.1 provided, in part:

(a) The plaintiff may stipulate to $25,000.00 as the maximum amount of damages recoverable upon the trial of an appeal from the award of arbitrators....

defendant driver but found a co-defendant liable. In accordance with the high/low agreement, however, the defendant driver was required to pay $45,000, the minimum recovery designated therein. The plaintiff sought to add prejudgment interest to the award, which the trial court denied, and the plaintiff appealed.

¶ 24 New Jersey courts define a high/low agreement as "a device used in negligence cases in which a defendant agrees to pay plaintiff a minimum recovery in return for plaintiff's agreement to accept a maximum sum regardless of the outcome of the trial." *Id.* at 104. Such an agreement protects a plaintiff from receiving less than the floor amount and protects a defendant from exposure to an award beyond the ceiling. *Shafer v. Cronk,* 220 N.J.Super. 518, 532 A.2d 1131 (1987). The New Jersey Superior Court expanded this definition in *Benz* by noting:

**Unless the parties expressly say otherwise, calculation of prejudgment interest beyond the chosen limits is not part of a high-low agreement.** The parties agree to let the usual process of trial and judgment operate and control the outcome, under all of the rules applicable to trial determinations, ... but they also agree that the result must be somewhere within the predetermined limits.

*Benz .v. Pires, supra* at 104 (emphasis added).

¶ 25 In affirming the trial court's decision denying the plaintiff prejudgment interest, the *Benz* Court held:

(b) If the plaintiff has filed and served a stipulation as provided in subdivision (a), any party may offer at trial the documents set forth in Rule 1305(b)(1)....
Rule 1305(b)(1) provided for the entry of documents including, but not limited to, records and reports of hospitals and licensed health care providers.

If there is a no-cause verdict, the agreed floor controls, and plaintiff takes the amount. There is nothing to calculate interest on. There is only the agreed minimum recovery.

If there is a damage verdict below the agreed floor, interest is calculated on the verdict and plaintiff receives the total, up to the agreed ceiling; if the total does not exceed the floor, plaintiff receives the floor.

If there is a damage verdict of the floor or more, but less than the agreed ceiling, interest is calculated on the verdict. Plaintiff receives the whole amount up to the ceiling.

If there is a damage verdict of the ceiling or more, plaintiff receives the amount of the ceiling.

*Id.* at 104 (footnotes omitted).

¶ 26 In *Malick v. Seaview Lincoln Mercury,* 398 N.J.Super. 182, 940 A.2d 1221 (2008), the New Jersey Superior Court, citing *Benz,* held in part that plaintiffs who have entered into high/low agreements are entitled to prejudgment interest if the jury's verdict is somewhere between the high and low limits but not if the verdict is above the agreed-upon high. *See also Elliott–Marine v. Campenella,* 351 N.J.Super. 135, 797 A.2d 201 (2002). The plaintiff, Mr. Malick, filed a complaint alleging that he was injured on the defendant's premises. During trial, the parties entered into a high/low agreement that was finalized and documented through two e-mails and a letter. A January 18, 2007 e-mail designated the upper limit as $1,000,000, the low as $175,000, and stipulated, "These numbers apply to the verdict and prejudgment interest ONLY. They do not apply to legal fees and litigation costs that may be awarded...." *Malick v. Seaview Lincoln Mercury, supra* at 1222. A jury awarded the plaintiff $5,000,000, which was reduced to $1,000,000 in accordance with the high/low agreement. Malick then filed a motion for the addition of interest, costs, and attorneys' fees. The trial court awarded Malick fees in the amount of $224,552, and the defendant appealed.

¶ 27 The *Malick* Court observed that the high/low agreement was a contract subject to traditional rules of contract interpretation. In addressing the ambiguity of the agreement in that case, the New Jersey appellate court reiterated, referencing *Benz,* that ordinarily in high/low agreements, prejudgment interest is awarded only if the jury's verdict is between the high and low limits, but not if the verdict exceeds the upper designation. *Id.* at 1224. The court observed, "[T]here is nothing to prevent the parties from making a different high/low agreement. They can agree, for instance, that prejudgment interest should be applied to the stipulated limits," but the terms must be expressed. *Id.* The e-mails and letter offered by the parties in *Malick* presented a conflicting, ambiguous contract that compelled the New Jersey Superior Court to remand the case to the trial court for resolution.

¶ 28 We believe the *Benz* analysis is persuasive. Although in *Benz* the verdict required the defendant to pay only the low amount designated in the agreement, the focus therein centered on the propriety of an award of prejudgment interest added to voluntary settlement limits. As in *Benz,* where the New Jersey court held, "If there is a damage verdict of the ceiling or more, plaintiff receives the amount of the ceiling," *Benz v. Pires, supra* at 104, we believe such a result is most consistent with our view of high/low agreements and contract principles in this Commonwealth. We previously established herein that the Agreement constituted a settlement, and per Rule 238, any delay damages would be added and "become part of the verdict."

Pa.R.C.P. 238. Thus, the addition of delay damages would exceed the agreed-upon ceiling, and the dignity of the high/low agreement would be compromised.

¶ 29 New York courts concur with the reasoning of *Benz*. In *Cunha v. Shapiro*, 42 A.D.3d 95, 837 N.Y.S.2d 160 (N.Y.A.D. 2 Dept.2007), the plaintiff brought an action to recover damages for personal injury. The parties placed a high/low agreement on the record with limits of $325,000 and $75,000, respectively. The jury returned a verdict of $400,000 that triggered the agreement, and the plaintiff was awarded $325,000. The damages were not paid, and Mr. Cunha filed a motion for the principal sum of $325,000 plus $46,800 in interest and various other fees, for a total amount of $373,060. The Shapiros sought to have the judgment vacated after repeated failed efforts to obtain the necessary release from Mr. Cunha that was compelled by a New York statute governing settling parties in actions to recover damages.

¶ 30 Two issues arose in that case, only the first of which is relevant herein. The New York court examined whether a high/low agreement, when triggered, constituted a voluntary settlement of the action. In what was an issue of first impression, the New York Supreme Court affirmed the trial court and held:

> A high/low agreement, when initially reached by the parties in ... litigation, is, in fact, a conditional settlement. The condition of the agreement is that the jury render[s] a verdict that falls outside the range of the high/low agreement. When a verdict is rendered outside the agreed-upon range, the condition is triggered and the "high" or the "low" becomes binding upon the parties as a

settlement. By contrast, when a jury renders a verdict within the range of the high-low agreement, the condition is not met and the high/low agreement is rendered academic.

*Id.* at 98–99, 837 N.Y.S.2d 160. The court cited a plethora of New York cases that treated high/low agreements as settlements.

¶ 31 Thus, both New York and New Jersey courts have held that high/low agreements constitute settlements, which is consistent with this Court's view. Moreover, case law in these sister jurisdictions reveals that where high/low agreements exist, the courts hold that the ceiling of an agreement is the cap on any damage amount awarded, including any prejudgment interest amount that otherwise would apply to the verdict in the absence of a settlement.

¶ 32 Our independent research also revealed a 1999 Louisiana case, *Becnel v. Stein*, 726 So.2d 468 (La.App. 5 Cir.1999), wherein the plaintiff and his wife sought damages for injuries received in an automobile accident with an allegedly intoxicated defendant. The defendants were Aaron Stein, his insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), and Louisiana Farm Bureau ("Farm Bureau").[3] Mr. Becnel settled with State Farm; the parties submitted the remaining claims of Mrs. Becnel to arbitration. Mrs. Becnel and State Farm entered into a high/low agreement during arbitration whereby State Farm would pay no less than $8,000 and no more than $50,000, which was the "per person" maximum policy limit. The arbitrators awarded $49,177.78 plus interest and costs. State Farm argued that the plaintiffs' re-

---

**3.** Farm Bureau was the uninsured-underinsured motorist carrier. Under Louisiana law, a negligent motorist is considered underinsured when the damages to the plaintiff exceed the liability coverage on the negligent motorist's vehicle.

covery was limited to the $50,000 maximum specified in the high/low agreement, while Farm Bureau asserted that since the award was within policy limits, State Farm was wholly liable. Thus, the defendants contested which party was liable for the interest and costs ordered by the arbitrator. Following a hearing, the trial court ruled that State Farm was not responsible for costs and interest on the award and that "any such amount should be borne by Farm Bureau." *Id.* at 470. Farm Bureau appealed, and the Louisiana Court of Appeals concluded:

> Our examination of the record discloses that the court correctly found that State Farm was, under the evidence submitted, obligated to pay no more than the $50,000.00[,] which it agreed to pay as the higher limits of the arbitration agreement.... Because the arbitrator's award included assessment of interest and costs, State Farm is liable to the plaintiff for any interest and costs **up to** the maximum of $50,000.

*Id.* at 470 (emphasis added).

¶ 33 The *Becnel* Court, in holding that State Farm was obligated to pay no more than $50,000, ruled consistently with New York and New Jersey courts, agreeing that the ceiling in a high/low agreement is the maximum amount awardable to a party. Thus, case law in each jurisdiction has established precedent holding that when entered into voluntarily and legally, a high/low agreement not only constitutes a valid settlement, but addition of prejudgment interest is appropriate only when the jury verdict is an amount between the high and low designations. When a jury returns a verdict beyond the agreed-upon ceiling, no prejudgment interest is awarded to that party.

¶ 34 Appellant contends that since the Agreement did not contain any language concerning delay damages, by read-

ing a limitation of delay damages into it, the trial court violated basic contractual principles of interpretation and undermined Rule 238. We disagree.

¶ 35 We have stated:

> A high/low agreement is considered a settlement contract. Settlement agreements "are regarded as contracts and must be considered pursuant to general rules of contract interpretation." *Friia v. Friia,* 780 A.2d 664, 668 (Pa.Super.2001). The fundamental rule in construing a contract "is to ascertain and give effect to the intention of the parties." *Id.* Thus, we "will adopt an interpretation which, under all circumstances, ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Id.* Additionally, if "the language appearing in the written agreement is clear and unambiguous, the parties' intent must be discerned solely from the plain meaning of the words used." *Id.* Moreover, we "may not ignore otherwise clear language merely because one of the parties did not anticipate related complications prior to performance." *Id.*

*Miller v. Ginsberg, supra* at 99.

¶ 36 Herein, Appellant asserts it cannot be inferred from the plain meaning of the contract that the $1,000,000 cap was inclusive of delay damages. Appellant's position ignores the purpose of the high/low agreement. As a tool commonly utilized in litigation, a high/low agreement guarantees a plaintiff a minimal recovery while concomitantly circumscribing a defendant's potential exposure. Court, counsel, and litigants favor them; they assure plaintiffs of minimally-acceptable recoveries while protecting defendants against exorbitant verdicts. Parties entering into high/low agreements are free to craft their terms in

any manner that is mutually acceptable. To engraft the addition of delay damages onto the ceiling of a high/low agreement that is silent to their applicability renders a high/low agreement useless for litigation purposes. The ceiling in such an agreement would be a nullity.

¶ 37 In consideration of the trends in other jurisdictions along with established Pennsylvania precedent regarding high/low agreements, we concur with the trial court's decision to deny an award of delay damages in the instant case. The parties herein were free to agree that delay damages should be applied to the stipulated limits, but they did not do so. Allowing Appellant to recover such amounts would defeat the plain meaning of the Agreement by exposing Appellee to liability beyond the amount to which it agreed. This Court must construe a contract only as written and may not modify the plain meaning "under the guise of interpretation." *Lobaugh v. Lobaugh,* 753 A.2d 834, 836 (Pa.Super.2000).

¶ 38 Order affirmed.