J-A14040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM HARRY ZIMMERMAN, PATRICIA ZIMMERMAN AND MARY NAN KERSTETTER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THOMAS JOSEPH ZIMMERMAN, TIMOTHY LEE ZIMMERMAN AND ELIZABETH ANNE PLOUFFE | : | No. 1069 WDA 2020 |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered October 6, 2020
In the Court of Common Pleas of Clearfield County Civil Division at
No(s): 2018-2100-CD

BEFORE: MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED: September 9, 2021**

Thomas Joseph Zimmerman ("Thomas"), Timothy Lee Zimmerman ("Timothy") and Elizabeth Anne Plouffe ("Plouffe") (collectively, "Defendants") appeal from the Judgment partitioning in kind certain real property between them and William Harry Zimmerman ("William"), Patricia Zimmerman ("Patricia") and Mary Nan Kerstetter ("Kerstetter") (collectively, "Plaintiffs").[1] We affirm.

On December 9, 1960, Harry Zimmerman and Donna Zimmerman ("Mrs. Zimmerman") (collectively, "the Zimmermans") acquired by deed

---

[1] Thomas, Timothy, Plouffe, William and Kerstetter are hereinafter referred to as "the Zimmerman siblings."

certain real property in Clearfield County, Pennsylvania ("the Property").[2] By a deed dated November 19, 1986, the Zimmermans conveyed the Property to themselves, using a survey of the Property to determine its boundaries.[3]

The Property is divided by State Route 879. One portion, which is comprised of 71.5 acres, has on it a house and outbuildings ("the House Parcel"). The remaining portion, which is comprised of 86.6 acres, has on it a barn ("the Barn Parcel").

Although Mrs. Zimmerman survived her husband, she passed away on October 11, 2008. Mrs. Zimmerman's Will provided that the Zimmerman siblings could purchase the property from her Estate for an agreed-upon price. The Zimmerman siblings agreed to purchase the property for $35,318.96 each, for a total of $176,594.80. By separate deeds on or about December 31, 2009, the coexecutors of Mrs. Zimmerman's Estate conveyed undivided one-fifth interests in the Property to each of the Zimmerman siblings. Thereafter, William added his wife, Patricia, as a joint owner of his one-fifth interest.

---

[2] The deed is recorded in Clearfield County Deed Book Volume 487, at page 29. Of note, a portion of the Property, comprised of 120.78 acres, is situated in Girard Township. The remaining 19 acres of the Property is partially situated in Covington Township, Pennsylvania.

[3] This deed is recorded in Clearfield County Deed Book Volume 1132, at page 10.

In 2009, Defendants and Kerstetter created D&H Manor, LLC ("D&H"), a Pennsylvania limited liability company, to manage the Property. On the advice of their attorney, William and Patricia elected not to join D&H. Consequently, William and Patricia have not been included in discussions regarding the management of the Property. Further, the Zimmerman siblings were unable to agree as to the use and management of the Property.

In December 2018, Plaintiffs filed a Complaint for an equitable partition of the Property. *See* Complaint, 12/14/18. Plaintiffs further sought payment for expenses they incurred that were necessary to maintain the Property. *Id.*, ¶¶ 30-31. Defendants filed an Answer denying that the Property could be "physically divided in a manner that is fair and will not prejudice the rights of some or all of the parties []." Answer and New Matter, 1/31/18, ¶ 26. Plaintiffs and Defendants agreed that the fair market value of the Property was appraised at $284,000, and that the Property is 149.63 acres in size.

The matter proceeded to a bench trial. At the conclusion of the trial, the trial court directed Plaintiffs and Defendants to submit proposed findings of fact and conclusions of law. Although the Plaintiffs filed Proposed Findings of Fact and Conclusions of Law (the "Proposed Findings and Conclusions"), no filing by Defendants appears of record. On February 10, 2020, the trial court entered an Opinion and Order adopting Plaintiffs' Proposed Findings and Conclusions. *See* Trial Court Opinion, 2/10/20, at 1 (adopting Plaintiffs' Finding and Conclusions). In accordance with the Proposed Findings and

Conclusions, the trial court directed that Plaintiffs receive the Barn Parcel and Defendants receive the House Parcel. *See id.* at 2. The trial court specifically determined that an in-kind partition of the Property could made without prejudice to the parties, and without "spoiling the whole." *Id.* at 2. The trial court valued the House Parcel, which was awarded to Defendants, at $142,000. Trial Court Order, 2/10/20, at 3, ¶ 1. The trial court awarded the Barn Parcel, which it valued at $142,000, to Plaintiffs. *Id.* at 3, ¶ 2. The trial court directed that contributions of labor and services provided by William and Kerstetter "shall comprise the owelty to equalize the purpart[4] values awarded to each sibling."[5] Trial Court Opinion, 2/10/20, at 2.

Defendants timely filed post-trial Motions on February 20, 2020. On March 11, 2020, the trial court scheduled argument for March 20, 2020. However, on March 16, 2020, the Pennsylvania Supreme Court declared "a general, statewide judicial emergency until April 14, 2020, on account of COVID-19." Supreme Court of Pennsylvania No. 531 Judicial Administration

---

[4] A "purpart" is defined as a "share of an estate formerly held in common; a part in a division." *Bernstein v. Sherman*, 902 A.2d 1276, 1278 (Pa. Super. 2006) (citing BLACK'S LAW DICTIONARY 1249 (7th ed. 1999)).

[5] "Owelty" has been defined as "1. Equality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property. 2. The sum of money so paid." *Id.* at 1279 n.3 (citations omitted); *see also* Pa.R.C.P. 1562 (setting forth Part II partition action procedural rule regarding real estate not capable of a proportionate division).

Docket, Order, 3/16/20, at 1. The Order authorized the president judges in the individual judicial districts to, *inter alia*, "suspend time calculations for the purposes of time computation relevant to court cases … as well as time deadlines[.]" ***Id.*** at 2. The Supreme Court extended and expanded the scope of the judicial emergency in several supplemental Orders, directing that the emergency shall cease on June 1, 2020. Supreme Court of Pennsylvania Nos. 531 & 532 Judicial Administration Docket, Order, 5/27/20.

On June 30, 2020, Defendants filed a Praecipe for entry of judgment.[6] Thereafter, Defendants filed a Notice of Appeal, which was docketed at 693 WDA 2020. However, because a portion of the Rule 227.4 timeframe took place during the judicial emergency, on August 17, 2020, this Court entered an Order quashing the appeal, without prejudice, and permitting the trial court to rule on Defendants' post-trial Motions on or before September 21, 2020. ***See Zimmerman et al. v. Zimmerman et al.***, 603 WDA 2020 (Pa. Super. filed August 17, 2020) (order). When the trial court failed to act upon this Court's Order within the specified time frame, the post-trial Motions were deemed denied. ***See Morningstar v. Hoban***, 819 A.2d 1191, 1195 (Pa. Super. 2003) (explaining that post-trial motions are "denied by operation of

---

[6] There is no indication of record or on the docket of a hearing on Defendants' post-trial Motions or an order disposing of the Motions. Apparently, Defendants filed the Praecipe pursuant to Pa.R.C.P. 227.4(1)(b), which provides that the prothonotary may enter judgment when the trial court does not enter an order disposing of post-trial motions within 120 days of their filing. ***See*** Pa.R.C.P. 227.4(1)(b).

law at the expiration of the 120-day period" following their filing pursuant to Pa.R.C.P. 227.4).

Defendants filed a Praecipe for entry of judgment on October 6, 2020. Thereafter, Defendants timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal. The trial court filed its Pa.R.A.P. 1925(a) Opinion on January 18, 2021.

Defendants present the following claims for our review:

1. Whether [the Property,] which is the subject of the action[,] is capable of division in kind without prejudice?

2. Whether credible and admissible evidence was presented as to the market value of each parcel sufficient to support a finding as to such market value?

3. Whether credible and admissible evidence was presented sufficient to support a determination that the contributions and maintenance made by Plaintiffs were necessary and substantial?

Brief for Appellants at 5 (numerical emphasis omitted).

Partition is an equitable remedy. *Marchetti v. Karpowick*, 667 A.2d 724, 727 (Pa. Super. 1995). This Court's scope of appellate review in equity matters is narrow and is limited to determining whether findings of fact are supported by competent evidence, whether an error of law has been committed or whether there has been a manifest abuse of discretion. *Hercules v. Jones*, 609 A.2d 837, 839 (Pa. Super. 1992). "[T]rial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to

follow proper legal procedures." ***Nicholson v. Johnston***, 855 A.2d 97, 102

(Pa. Super. 2004).

Further, we are mindful of the following:

Partition of real property is governed by the Rules of Civil Procedure. ***See*** Pa.R.C.P. 1551-75[.] … [Reviewing a partition order is] a question concerning interpretation of these Rules, and thus is a question of law. Therefore, our standard of review is *de novo.* ***LaRue v. McGuire***, 885 A.2d 549, 553 (Pa. Super. 2005). Further, "[p]artition is a possessory action; its purpose and effect being to give to each of a number of joint owners the possession [to which] he is entitled ... of his share in severalty. It is an adversary action[,] and its proceedings are compulsory. The rule is that the right to partition is an incident of a tenancy in common, and an absolute right." ***Lombardo v. DeMarco***, … 504 A.2d 1256, 1260 ([Pa. Super.] 1985) (quotation and citations omitted).

***Bernstein***, 902 A.2d at 1278.

Pennsylvania Rules of Civil Procedure 1560 and 1561 provide, in

relevant part, as follows:

### Rule 1560. Property Capable of Division without Prejudice

If division can be made without prejudice to or spoiling the whole, the property shall be divided as follows:

**(a)** into as many purparts as there are parties entitled thereto, the purparts being proportionate in value to the interests of the parties;

**(b)** if it cannot be divided as provided in Subdivision (a), then into as many purparts as there are parties entitled thereto, without regard to proportionate value;

**(c)** if it cannot be divided as provided in Subdivisions (a) or (b), then into such number of purparts as shall be most advantageous and convenient without regard to the number of parties.

**Rule 1561. Property Capable of Proportionate Division. Award**

Property divided under Rule 1560(a) shall be awarded to the parties according to their respective interests….

Pa.R.C.P. 1560-1561.

Defendants combine their first two claims in the Argument section of their appellate brief. Accordingly, we will address them together.

Defendants argue that the trial court erred in ordering an in-kind partition of the Property, where Plaintiffs had failed to establish the value of each proposed parcel. *See* Brief for Appellants at 12-13. In particular, Defendants challenge the admissibility of Kerstetter's testimony regarding the acreage and value of the two parcels. *Id.* at 11-12. Defendants point out that Kerstetter was not qualified as an expert. *Id.* at 12. According to Defendants, "the testimony of [] Kerstetter as to her calculation of the acreage contained within the two parcels should have been precluded by the application of [Pa.R.E.] 701[,] and it was error for the court to allow it." *Id.*

Further, Defendants assert that there was no evidence establishing Kerstetter's expertise in the area of subdivision of real property, or regarding local subdivision ordinances. *Id.* at 13. Thus, Defendants argue, Kerstetter's testimony regarding the soil conditions, food plots for wildlife, and the planting of trees have no relevance in the calculation of the fair market value of the parcels. *Id.* at 13-14. Further, Defendants point out that Plaintiffs' appraisal makes no mention of such items. *Id.* Because Plaintiffs failed to obtain

appraisals for each parcel, Defendants assert that the trial court erred in granting an in-kind partition of the Property. *Id.* at 14.

Plaintiffs counter that Pennsylvania Rule of Civil Procedure 1560 "begins with the presumption that a property should be physically divided if such division does not prejudice the whole." Brief for Appellees at 10. Plaintiffs argue that the trial court's decision is based upon substantial evidence that the property (1) is a very large farm parcel with diverse positive features at various locations throughout the property, and (2) is naturally divided by Pennsylvania State Route 879, which allows for easy physical division. *Id.* Further, Plaintiffs argue that the evidence established that there is excellent road access to both the House Parcel and the Barn Parcel. *Id.* Plaintiffs further assert that the evidence established the total acreage of the Property. *Id.* at 10-11. Plaintiffs rely upon the appraisal conducted by Sonja Flanagan ("the Flanagan Appraisal"), of Provost Real Estate Appraisers, which included numerous photographs depicting the rural nature of the Property, its bisection by State Route 879, and the improvements on the Property. *Id.* at 11. Plaintiffs also direct our attention to additional exhibits, including aerial maps depicting the physical attributes of the Property. *Id.* at 11-12. Finally, Plaintiffs direct our attention to the testimony of Kerstetter. *Id.* at 12. According to Plaintiffs, they presented evidence of Kerstetter's personal knowledge of the Property, including its acreage and soil conditions. *Id.* at 13.

In essence, Defendants challenge the admissibility of Kerstetter's testimony regarding the size and attributes of each parcel, and the trial court's reliance on her testimony in determining that an in-kind partition may be effectuated without prejudice to, or spoiling of the Property. "[A] trial court has broad discretion with regard to the admissibility of evidence...." *Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 102 (Pa. Super. 2011). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or [unduly] prejudicial to the complaining party." *Ettinger v. Triangle-Pacific Corp.*, 799 A.2d 95, 110 (Pa. Super. 2002).

Additionally, "this Court has stated that we will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 914 (Pa. Super. 2017) (*en banc*) (citation omitted). Further, we reiterate that,

> [i]n a non-jury trial, the factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder. The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Id.* at 916 (internal citations and quotation marks omitted).

Pursuant to Pennsylvania Rule of Evidence 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony…." Pa.R.E. 602. Moreover, Pennsylvania Rule of Evidence 701 provides as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

**(a)** rationally based on the witness's perception;

**(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

**(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. By contrast, Rule 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

**(b)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

**(c)** the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Generally, an "owner is competent to testify to the value of his property … since [s]he has at least a general knowledge of what [s]he owns." ***Sgarlat***

*Estate v. Commonwealth*, 158 A.2d 541, 545 (Pa. 1960); *see also Glanski v. Ervine*, 409 A.2d 425, 431 (Pa. Super. 1979). As this Court has explained, "[t]he real owner is deemed qualified, by reason of h[er] relation as owner, to give estimates of the value of what [s]he owns, regardless of h[er] knowledge of property values, and the weight of such evidence is for the [fact-finder]." *Guntrum v. Citicorp Tr. Bank*, 196 A.3d 643, 648-49 (Pa. Super. 2018) (citation omitted).

At trial, Kerstetter testified that she has lived on the Property since she was five years old, when her parents acquired the Property. N.T., 11/15/19, at 8. Further, Kerstetter acknowledged that she owns a one-fifth, undivided interest in the Property. *Id.*

Kerstetter stated that she has reviewed the deed to the Property and aerial photographs. *Id.* at 9. Kerstetter testified that she is employed as a soil conservationist for the United States Department of Agriculture. *Id.* at 15. According to Kerstetter, her employment includes mapping and calculating acreages of real property. *Id.* Kerstetter calculated the acreages of the Property and the respective parcels using digitizing software that traces the boundaries of the parcels. *Id.* at 16. According to Kerstetter, she uses the same software as part of her employment. *Id.* Kerstetter testified that she calculated the House Parcel to be 71.5 acres in size, and the Barn Parcel to be 86.6 acres in size. *Id.* at 14, 26.

More importantly, Kerstetter stated that she lived at, and grew up on the Property. *Id.* at 18. From aerial photographs, Kerstetter described the various features of the Property, including the tillable acreage, the wooded acreage, and the stream running across the Property. *Id.* at 17-23. Kerstetter also described the acres of the Property amenable to subdivision, in her personal opinion, as they have access to utilities and the highway. *Id.* at 23. In particular, Kerstetter described the differences between the quality and quantity of the two parcels. *Id.* at 26-27.

Kerstetter testified that she has planted "a variety of different food plots and stuff here [on the Property] to benefit the soils on the [P]roperty and to benefit the pollinator habitat …." *Id.* at 29. According to Kerstetter, the food plots are planted on both the House Parcel and the Barn Parcel. *Id.* Specifically, Kerstetter testified that she planted approximately five acres on the Barn Parcel and three acres on the House Parcel. *Id.* at 30. Further, Kerstetter and William planted approximately 200 trees on the Barn Parcel. *Id.*

Kerstetter also testified that she created "custom soil research reports" for the parcels. *Id.* at 32. According to Kerstetter, "that's something anybody can do" by using the Internet. *Id.* Kerstetter testified that in July 2018, she mowed the fields on the Property. *Id.* at 40. In 2013, Kerstetter testified, she seeded the Property, sprayed the House Parcel, and mowed fields on the Property. *Id.* at 43. Every year, Kerstetter testified, she has cleared the

Property of downed tree branches. *Id.* at 45. In fact, Kerstetter testified, she had spent approximately 627 hours laboring at the Property. *Id.* at 48. Thus, while Kerstetter used some of her expertise calculating the size of the parcels, she also used her intimate knowledge of the Property, as owner, over many years. In light of the foregoing, we cannot conclude that the admission of Kerstetter's testimony regarding the size of the parcels violated Pa.R.C.P. 701. *See Guntrum*, 196 A.3d at 648-49.

The trial court determined that the Property could be partitioned in kind, without prejudice to Plaintiffs or Defendants. *See* Trial Court Opinion, 2/10/20, at 1; Trial Court Opinion, 1/18/21, at 4. In so holding, the trial court credited the testimony of Kerstetter, "as she spent much more time there than the other siblings[.]"[7] Trial Court Opinion, 2/10/20, at 5. Further, the trial court relied upon Kerstetter's testimony regarding the acreage of each parcel. *Id.* It was solely within the province of the trial court to assess the credibility of Kerstetter's testimony and the weight to give it. *See Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (stating that "[w]hen the trial court sits as fact[-]finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented." (citation and brackets omitted)).

---

[7] It does not appear that the trial court relied on Kerstetter as an expert, but rather, on Kerstetter's familiarity with the Property as an owner.

In reviewing the trial court's partitioning of the Property, and its reliance on Kerstetter's testimony, we are cognizant that the trial court had available to it the Flanagan Appraisal. Plaintiffs' Trial Exhibit P-7. According to the Flanagan Appraisal, 30% of the Property is described as "One-Unit," and 70% is described as "Vacant." *Id.* at 2 (unnumbered). The Flanagan Appraisal calculated the total size of the Property to be 139.78 acres. *Id.*; *see also id.* at 4 (unnumbered). Further, the Flanagan Appraisal noted that the Property was not zoned, and the lack of zoning "offers no adverse [e]ffect on marketability or market value." *Id.*

The Flanagan Appraisal, using comparables and prior land sales, applied a cost approach to value, which resulted in a value of $176,822, "or $177,000 rounded[,]" for the Property. *Id.* at 3 (unnumbered). However, the Flanagan Appraisal opined that "[t]he cost approach is not considered to be applicable or relevant and thus was not developed as depreciation would render this approach unreliable." *Id.* Ultimately, the Flanagan Appraisal determined the fair market value of the Property to be $284,000. *Id.* at 1 (unnumbered). The parties stipulated to the fair market value of the Property, as set forth in the Flanagan Appraisal. N.T., 11/15/19, at 6.

The trial court additionally had available to it aerial photographs of the Property, admitted into evidence as Plaintiffs' Exhibits P-2 through P-6. *See* N.T., 11/15/19, at 96 (wherein the aerial photographs were admitted into evidence). Each Exhibit includes scale bars denoting 1000 feet. Another

exhibit, Joint Exhibit 1, is a 1986 survey of the Property. ***See*** N.T., 11/15/19, at 7 (wherein Joint Exhibit 1 is admitted into evidence). Joint Exhibit 1 notes that one inch equals 400 feet on the survey. ***See*** Joint Exhibit 1.

Thus, we discern no error or abuse of discretion by the trial court in admitting Kerstetter's testimony and relying on that testimony to effectuate an in-kind partition of the Property. ***See Gutteridge***, 165 A.3d at 914. Further, the trial court's determination that an in-kind partition of the Property would not spoil the whole, or prejudice the parties, is supported by the evidence of record. ***See*** Pa.R.C.P. 1560-1561. As such, we cannot grant Defendants relief on their first two claims. ***See id.***

In their third claim, Defendants challenge the trial court's determination of owelty. Brief for Appellants at 15. Defendants assert that Kerstetter's efforts did not constitute a "material enhancement to the value of the common [P]roperty." ***Id.***

Pennsylvania Rule of Civil Procedure 1562 provides that "[s]ums payable as owelty shall be secured and paid in such manner as the court shall direct." Pa.R.C.P. 1562.

In its Opinion, the trial court explained its decision as to owelty as follows:

> Evidence was presented by [] Kerstetter [] as to contributions and maintenance of the [P]roperty, as she spent much more time there than any of the [Zimmerman] siblings, although she never excluded anyone from the [P]roperty. A detailed list is included within Plaintiffs' [Proposed Findings and Conclusions], which outlines the contributions and labor effectuated by Kerstetter, and

services provided by William [].  Pursuant to Pennsylvania Rule of Civil Procedure 1570, there will be no adjustments for credit as to Kerstetter or William [], as the [trial court] has determined [that] this amount shall comprise the owelty to equalize the purpart values awarded to each sibling.

Trial Court Opinion, 2/10/20, at 2.

Our review of the Proposed Findings and Conclusions discloses that Kerstetter rendered improvements to the Property, which included, *inter alia*, the following:  seeding, spraying the house to prevent infestation, cleaning the porches with a pressure washer, placing "No Trespass" posters annually, trimming tree limbs annually to facilitate mowing, revising a timber contract, patching a tear in the barn roof, painting the porches of the house, mowing, maintaining the alarm system, maintaining the mower, planting trees, *etc.* **See** Proposed Findings and Conclusions at ¶ 46.  At trial, Kerstetter testified regarding these improvements. **See**, **e.g.**, N.T., 11/15/19, at 38-41 (wherein Kerstetter testified regarding her costs in mowing the fields, and how her planting improved the soil conditions on the Property), 43 (wherein Kerstetter testified regarding seeding and spraying performed on the Property), 44 (wherein Kerstetter testified regarding posting between 50 and 70 "No Trespass" signs on the Property and trimming low-hanging limbs), 45 (wherein Kerstetter testified regarding her efforts to clean fallen limbs from the Property and yearly trimming a walnut tree next to the house), 46 (wherein Kerstetter testified about placing four tree stands on the Property). Kerstetter presented detailed records regarding the hours and charges for

- 17 -

each of her activities to improve the Property. *Id.* at 47-49; *see also* Exhibit P-10 (setting forth on a spreadsheet each activity undertaken by Kerstetter, the date of the activity, and the hours to complete the activity to improve the Property). Kerstetter valued her costs to improve the Property at $9,348.95. *Id.* at 49.

Further, the Proposed Findings and Conclusions detail William's efforts to improve the Property. *See* Findings and Conclusions at ¶ 49. These efforts included fixing the hot water heater, the bathtub, the house roof, the barn roof, and the installation of gates. *See id.* William additionally painted the front of the barn, inspected timber harvesting, as well as grass mowing in 2019. *See id.* At trial, William confirmed the detailed listing of his efforts to improve the Property. *See* N.T., 11/15/19, at 79-82; *see also* Exhibit P-14 (depicting each activity undertaken by William to improve the Property, his mileage, costs of equipment rental and the type of "job.").

Thus, the trial court's determination of owelty is supported in the record, and we discern no abuse of discretion or error of law. *See Nicholson*, 855 A.2d at 102 (recognizing a trial court's "broad equitable powers to effectuate justice[,]" and explaining that this Court will find an abuse of discretion only if "the trial court has misapplied the law or failed to follow proper legal procedures."). On this basis, we cannot grant Defendants relief on their third claim. Accordingly, we affirm the Order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2021