J-A16007-24

2024 PA Super 196

| | | |
|---|---|---|
| JASON SENSENIG AND JANET SENSENIG; DAVID SPEICHER AND CARLA SPEICHER; TED BECQUET AND SHERRY BECQUET; KELLY HENRY; BRUCE BECQUET AND PENNY BECQUET; BARRY CALHOUN; AND T. WAYNE FEIGHT | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| KARL GREENLEAF AND MARY GREENLEAF | : : : : | |
| Appellants | : | No. 876 WDA 2023 |

Appeal from the Order Entered June 28, 2023
In the Court of Common Pleas of Bedford County Civil Division at No(s):
2009-00977, 2011-01158

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY KUNSELMAN, J.:                              **FILED:  September 4, 2024**

Karl and Mary Greenleaf appeal from the order denying their petition for reimbursement of easement-maintenance costs from some of their neighbors. Because the trial court misinterpreted the operable settlement agreement and failed to apply the Easement Deeds that the parties (or their predecessors in interest) executed, we reverse.

In September 2009, several of the Greenleafs' neighbors sued to enjoin them from interfering with the neighbors' use of a private road.  The neighbors claimed ownership of an easement, known as Old Henry Path Road, through the Greenleafs' farm in Bedford County.  Composed of dirt, slate, and gravel, the road afforded the only means of access to the neighbors' various properties.

The Greenleafs filed an answer, new matter, and counterclaims for quiet title and for trespass. They asked the trial court to determine the neighbors' rights in the easement and to set its location and width. The Greenleafs also sought to compel the Sensenigs to remove an encroachment on the road.

The matter eventually proceeded to a bench trial before the Honorable Daniel Howsare, Ret. The parties filed post-trial briefs. Among other relief, the neighbors requested that the trial court "direct the way in which the parties to the instant action are to share in the expenses associated with the maintenance and repair" of the road. Neighbors' Post-Trial Brief at 8.

On March 24, 2010, the trial court issued a memorandum opinion and order. Relying on various theories of acquisition, the court ruled that the neighbors had title to the easement and established its location and width on the Greenleafs' property. It also ordered the Greenleafs and some neighbors (the Sensenigs; Arthur Becquet, Jr.; and Mr. Calhoun) to be "jointly responsible for the maintenance of Old Henry Path Road . . . ." Trial Court Opinion and Order, 3/24/10, at 24.

Eight months later, the Greenleafs petitioned for contempt and damages against the neighbors, and, in 2011, they initiated their own action against the neighbors. The trial court did not consolidate the two suits, but the parties began filing their papers at both docket numbers. The trial court eventually denied the Greenleafs' petition for contempt, and they appealed. We affirmed. *See Sensenig v. Greenleaf*, 1722 WDA 2014, 2015 WL 6737679 (Pa. Super. 2015) (non-precedential decision).

Thereafter, on February 5, 2016, the parties executed a settlement agreement. The settlement "incorporated by reference" the March 24, 2010 order. Agreement and Mutual Release at 4. The parties also agreed that they "who share an interest in and have a right to use [the road] for purposes of ingress, egress, and regress shall bear equal responsibility for the maintenance of the same." *Id.* at 4. Furthermore, "[i]n the event of any legal action or other legal proceeding arising from this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs incurred therein." *Id.* at 6. Finally, the agreement "shall bind and shall inure to the benefit of the parties hereto, as well as the parties' respective heirs, executors, personal representatives, successors and assigns." *Id.*

On the same day, the Greenleafs executed Easement Deeds to some of the neighbors. The deeds dictated that the "maintenance of said right-of-way shall be borne equally by all those who have been granted said right-of-way for ingress, egress, and regress to their property." Deed of Right-of-Way from Greenleafs to Ted and Sherry Becquet, 2/5/16, at 1; Deed of Right-of-Way from Greenleafs to Bruce and Penny Becquet, 2/5/16, at 1; Deed of Right-of-Way from Greenleafs to Landon and Peg Henry, 2/5/16, at 1; Deed of Right-of-Way from Greenleafs to David and Carla Speicher, 2/5/16, at 1; Deed of Right-of-Way from Greenleafs to T. Wayne Feight, 2/5/16 at 1.

Over the next several years, the parties maintained the easement by filling in ruts, adding slate or gravel, and recrowning the road. They personally performed the maintenance work on an annual basis, when they individually

deemed such maintenance to be necessary. The neighbors did not coordinate that maintenance with one another or the Greenleafs. The parties did not charge each other for their in-kind labor on the easement.

Then, in December of 2021, the Greenleafs believed that the road had deteriorated to the point that the parties could no longer properly repair it themselves. Mr. Greenleaf was also concerned that precipitation runoff was eroding away his crops. The Greenleafs unilaterally hired Mark Weimert, a professional excavator and contractor, to repair the road and to redirect its runoff flow. According to Mr. Weimert, the road needed its grading raised and potholes filled with 21 loads of slate and 111 tons of gravel. When Mr. Weimert finished, he billed the Greenleafs $7,334.09, which they paid in full.

The Greenleafs' attorney sent letters to Barry and Sally Calhoun, the Estate of Arthur Becquet, Ms. Henry, Mr. Feight, the Speichers, the other Becquets, and the Sensenigs, requesting they each pay $814.90. The Greenleafs asked the Sensenigs to pay an additional $1,994.47 for work that Mr. Weimert performed on a section of the easement belonging solely to the Sensenigs.[1] **See** Letter from Attorney Despoy to Attorney Matthew P. Gieg, 2/1/22, at 1. Mr. Feight paid the requested $814.90, but the others refused to pay anything, because they believed that the maintenance was not necessary.

---

[1] Under the Sensenigs' deed, they own a larger portion of the easement than the other neighbors. Thus, the parties agree that the Sensenigs bear a greater responsibility for maintenance than the other neighbors.

In September of 2022, the Greenleafs filed a Petition for Reimbursement of Expenses for Right-of-Way at the two docket numbers involving the parties' original easement dispute. The petition sought to recover damages from the current Easement Owners, besides Mr. Feight. The Greenleafs also asked the trial court to award them their legal fees. The Easement Owners filed a reply denying that they owed the Greenleafs anything.[2]

On June 28, 2023, a new trial judge conducted an evidentiary hearing on the petition and denied relief from the bench. The court explained that, in its view, the shared-maintenance clause in the settlement agreement covered only maintenance intended for ensuring continued ingress and egress, not

_____

[2] Arthur Becquet, Jr. and Landon and Peg Henry died before the Greenleafs' filed the at-issue petition for reimbursement of easement-maintenance costs. The successors to Mr. Becquet's interest – Bruce Becquet and Carla Speicher – were already parties to these lawsuits. The successor to Mr. and Mrs. Henry's interest was Kelly Henry. *See* Answer of Respondents . . . to Petition for Reimbursement . . . at 1-2. Kelly Henry was not an original party to either lawsuit. Curiously, no one moved to substitute him for Mr. and Mrs. Henry, nor did Kelly Henry object to the trial court's assertion of *in personam* jurisdiction over him due to the lack of service of process.

Instead, Kelly Henry voluntarily appeared through counsel as a self-identified Respondent in the answer to the Greenleafs' petition and at the hearing to defend against the petition on the merits. *See* N.T., 6/28/23, at 5. A party "will be regarded as having appeared if he . . . file[s a] defense to the merits of the cause . . . ." *McCullough v. Railway Mail Assoc.*, 73 A. 1007, 1008 (Pa. 1909). By doing so, he "submits himself to the jurisdiction of the court for the trial of the cause on its merits, and is bound by the judgment." *Id.* Thus, despite the deaths of three original litigants, all of the interested parties are properly before us. We have amended the caption to remove the deceased litigants and to include Kelly Henry as a named party. For simplicity sake, we refer to the current parties in interest as "Easement Owners."

maintenance intended for mitigating water runoff. The court found that the Greenleafs' primary motivation for hiring Mr. Weimert was to protect their crops, not to ensure continued use of the road. It also found that the parties established a pattern of personally performing the maintenance work on the road, which evidenced their intent to exclude the cost of hiring a contractor from the shared-maintenance clause.

The trial court made no mention of the maintenance language in either the March 24, 2010 order or the Easement Deeds. The Greenleafs timely appealed at both docket numbers.

They raise two claims of error as follows:

1. Did the trial court err . . . when it denied the Petition for Reimbursement of Maintenance Expenses of Right-of-Way?

2. Did the trial court err . . . when it denied the [Greenleafs'] request for attorney's fees as laid out in the terms of the parties' contract?

Greenleafs' Brief at 4. We address each issue in turn.

First, the Greenleafs insist that, under the unambiguous language of the governing documents, the Easement Owners must reimburse them for their proportionate shares of Mr. Weimert's bill. According to the Greenleafs, by restricting the term "maintenance" to only maintenance needed for ingress and egress and only in-kind labor contributions, the trial court "erroneously narrowed the terms of the Agreement, unduly restricting what the parties agreed upon." *Id.* at 17. They claim that no such limiting language appears in the governing documents and that the result is absurd, because in-kind

repairs by the parties or their successors will not be possible into perpetuity. The Greenleafs point to their advanced age and the fact that Mr. Greenleaf now uses a wheelchair as proof that the trial court's interpretation of the settlement agreement is untenable. They contend that Mr. Greenleaf (now in his 80s) cannot physically maintain the road through in-kind labor.

The Easement Owners offer little in the way of rebuttal. **See** Easement Owners' Brief at 6-7. They claim the trial court's ruling was correct, because the settlement agreement is clear and unambiguous. However, they only discuss what the agreement does not say, rather than what it says, to support their contention. They assert the "settlement agreement says nothing about the manner in which it was to be maintained by the parties nor that any of the parties could undertake maintenance thereof at their unilateral discretion and bill the other parties for meeting their own duty with respect thereto." **Id.** at 7. Like the trial court, the Easement Owners ignore the March 24, 2010 order and the Easement Deeds. All three documents are necessary to resolve this issue.

The Supreme Court of Pennsylvania has held that "the interpretation of the terms of a contract is a question of law for which our standard of review is de novo and our scope of review is plenary." **McMullen v. Kutz**, 985 A.2d 769, 773 (Pa. 2009). Similarly, interpreting deeds presents a pure question of law; thus, "we review the trial court's construction of a deed de novo." **Murphy v. Karnek**, 160 A.3d 850, 859 (Pa. Super. 2017).

"Settlement agreements are regarded as contracts and must be considered pursuant to general rules of contract interpretation." ***Thompson v. T.J. Whipple Const. Co.***, 985 A.2d 221, 224 (Pa. Super. 2009). "The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties." ***Id.*** at 229. If "the language appearing in the written agreement is clear and unambiguous, the parties' intent must be discerned solely from the plain meaning of the words used." ***Id.***

"The same principles that apply to the interpretation of a contract apply to the interpretation of a deed." ***Starling v. Lake Meade Prop. Owners Assoc., Inc.***, 162 A.3d 327, 341 (Pa. 2017). "We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words . . . ." ***Id.*** (some punctuation omitted).

The trial court's original order, dated March 24, 2010, directed that the Greenleafs; the Sensenigs; Arthur Becquet, Jr.; and Mr. Calhoun be "jointly responsible for the maintenance of" the easement. Trial Court Opinion and Order, 3/24/10, at 24. The parties expressly incorporated that language into their settlement agreement. ***See*** Agreement and Mutual Release at 1. Thus, the trial court erred, as a matter of law, by limiting its scope of review to only the shared-maintenance clause of the settlement agreement and disregarding its prior order. Additionally, under the settlement agreement, the "parties hereto who share an interest in and have a right to use [the easement] for purposes of ingress, egress, and regress shall bear equal responsibility for the maintenance of the same." ***Id.*** at 4. Finally, the Easement Deeds mandated

that the "maintenance of said right-of-way shall be borne equally by all those who have been granted said right-of-way for ingress, egress, and regress to their property." Easement Deeds at 1.[3]

Taken together, the three governing documents unambiguously impose a duty upon the Easement Owners to reimburse the Greenleafs for their proportionate shares of the easement-maintenance costs. Their obligation to reimburse the Greenleafs applies regardless of how the maintenance costs arose, because nothing in the order, the settlement agreement, or the Easement Deeds limits the responsibility to in-kind labor for maintaining the gravel road.

Further, the language in the settlement agreement does not limit the word "maintenance" to repairs intended to allow ingress and egress. In fact, the prepositional phrase "for purposes of ingress, egress, and regress" in the shared-maintenance clause modifies the verb "to use," not the noun "maintenance." Agreement and Mutual Release at 4. By transposing the prepositional phrase from modifying "to use" to modifying "maintenance," the trial court effectively rewrote the parties' contract. This was legal error. **See Thompson**, **supra**.

_____

[3] **See** Deed of Right-of-Way from Greenleafs to Ted and Sherry Becquet, 2/5/16, at 1; Deed of Right-of-Way from Greenleafs to Bruce and Penny Becquet, 2/5/16, at 1; Deed of Right-of-Way from Greenleafs to Landon and Peg Henry, 2/5/16, at 1; Deed of Right-of-Way from Greenleafs to David and Carla Speicher, 2/5/16, at 1; Deed of Right-of-Way from Greenleafs to T. Wayne Feight, 2/5/16 at 1.

Significantly, the court also erred by neglecting to review the Easement Deeds. Under the property law of this Commonwealth, the Easement Deeds are the **only** operable document governing the easement maintenance among the Becquets, Kelly Henry, the Speichers, and the Greenleafs, because, for purposes of this issue, the settlement agreement merged into the deeds.

"The doctrine of merger provides that as a general rule an agreement of sale merges into the deed and no recovery may be had based upon an earlier agreement." *Valvano v. Galardi*, 526 A.2d 1216, 1220 n.2 (Pa. Super. 1987). Moreover, if "a grantor conveys land by his deed upon terms and conditions stated therein, the grantee, by accepting the deed, consents to its conditions." *Blood v. Crew Levick Co.*, 35 A. 871, 872 (Pa. 1896). The grantee "is bound by them as fully as he could have bound himself by signing and sealing the covenants and conditions contained in the deed, and they may be enforced by the persons in whose behalf they are made with substantially the same effect." *Id.*

By signing the settlement agreement, the Greenleafs agreed to deed an easement to the Becquets, Henrys, and Speichers. Thus, the settlement agreement functioned as an agreement of sale for the easement between those parties. Also, the language regarding maintenance in the settlement agreement merged into the maintenance language in the parties' Easement Deeds, and that deed language superseded the maintenance language in the settlement agreement. Therefore, the trial court erred by failing to consider

the maintenance language of the Easement Deeds of those parties and by relying only on the shared-maintenance clause in the settlement agreement.

By accepting the Easement Deeds from the Greenleafs and pursuant to **Blood**, **supra**, the Becquets, Henrys, and Speichers covenanted that the "maintenance of said right-of-way shall be borne equally by all those who have been granted said right-of-way for ingress, egress, and regress to their property." Easement Deeds at 1. Under that plain language, the phrase "for ingress, egress, and regress" modifies "right-of-way," which proceeds the prepositional phrase, not the "maintenance" of that right-of-way. **Id.** Review of the Easement Deeds reveals no limiting language regarding the purpose of maintenance of the right-of-way. In fact, the word "purpose" does not appear in the Easement Deeds. Thus, the Greenleafs' purpose for hiring Mr. Weimert to maintain the easement was irrelevant.

Hence, under all three governing documents, the trial court mistakenly analyzed Mr. Greenleaf's motivation for hiring Mr. Weimert to perform the maintenance. The trial court found that the Greenleafs' purpose for the "maintenance" was not the "maintenance" that the parties intended, because, in the trial court's view, "maintenance" meant only maintenance to keep the easement passable. Nothing in the four corners of the contract, the Easement Deeds, or the March 24, 2010 order supports the trial court's cramped reading of the unmodified word "maintenance."

Here, a party's purpose for "maintenance" on the road is irrelevant, because nothing in the three documents limits the term to "maintenance for

ingress and egress." Nor do any of the governing documents specify "in-kind," "reasonable," "routine," "annual," or "necessary" maintenance. If the parties had wished to limit the word "maintenance" in such ways, they could and should have drafted their contract and deeds to include those adjectives or similar limiting language. They did not.

Rather, the parties clearly, plainly, and unambiguously agreed to share the responsibility of any "maintenance," in whatever form, for whatever purpose, and at whatever cost it might entail. Any interpretation of the documents to the contrary is unsustainable. The only factual question for the trial court to resolve was whether the work for which the Greenleafs billed the Easement Owners constituted maintenance of the gravel road. Once the trial court decided that the work was "maintenance" on the gravel road, its analysis should have ended.

Indeed, this Court has previously equated "maintenance" of easements with the obligation to pay for such maintenance. "Maintenance costs money. Those who are entitled to enjoy the easements are the ones who must pay **the costs** of maintenance . . . ." **Meadow Run & Mountain Lake Park Assoc. v. Berkel**, 598 A.2d 1024, 1026 (Pa. Super. 1991) (emphasis added).

Presumably, Judge Howsare was aware of our common law of easement maintenance when issuing the March 24, 2010 order. Presumably, the parties were also aware of it, and the neighbors in particular asked Judge Howsare to "direct the way in which the parties . . . are to share in **the expenses** associated with the maintenance and repair" of the road. Neighbors' Post-

Trial Brief at 8 (emphasis added). Thus, we interpret the unmodified word "maintenance" in the March 24, 2010 order, the settlement agreement, and the Easement Deeds in light of our case law. The word "maintenance" means that the parties "shall bear equal responsibility" for maintenance costs, not simply a mutual obligation to perform in-kind labor. Settlement Agreement at 4; *see also Meadow Run*, *supra*.

We hold that, when the language of the governing document does not explicitly state otherwise, a party responsible to maintain an easement (either individually or jointly) may discharge that duty either by hiring a third-party contractor or by personally laboring upon the easement. We further hold that the cost of that maintenance may properly be reduced to a claim for damages (as the Greenleafs have done) against other users of the easement, to the extent that the governing document or common law renders the parties who use the easement jointly responsible for maintaining the easement.[4]

In sum, under the plain and unambiguous language of the settlement agreement and Easement Deeds, the Easement Owners and the Greenleafs agreed and covenanted to share the costs of any "maintenance." How or why those maintenance costs arose is inconsequential. Therefore, the Easement

---

[4] We note that these holdings comport with § 4.13(3) of THE RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) (2000), which provides, "Joint use by the servient owner and the servitude beneficiary of improvements used in enjoyment of an easement or profit, or of the servient estate for the purpose authorized by the easement or profit, gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion of the servient estate or improvements used in common."

Owners breached the settlement agreement, the March 24, 2010 order incorporated therein, and the Easement Deeds by refusing to reimburse the Greenleafs $814.90. The Sensenigs further breached the March 24, 2010 order and the settlement agreement for an additional $1,994.47 for the costs of the repairs made to their section of the easement.

The Greenleafs' first issue warrants full appellate relief.

As their second appellate issue, the Greenleafs contend the trial court also erred by refusing to grant them reasonable attorney's fees, because they are the prevailing party in this settlement-enforcement action. The parties agree that any "prevailing party" is entitled to legal fees under the settlement agreement. *See* Easement Owners' Brief at 9.

Our review of the settlement agreement supports that interpretation, and, given our disposition of the first appellate issue, the Greenleafs are now the prevailing party in this proceeding. Thus, we remand for the trial court to determine, in the first instance, the reasonable attorney's fees incurred by the Greenleafs and to award them that amount.[5]

_____

[5] We also note that the parties' settlement agreement required both sides to mark their opposing lawsuits settled and discontinued. *See* Agreement and Mutual Release at 4-5. Neither discontinuance was filed. Had the trial court required the filing of those discontinuances while the dockets sat inactive for nearly eight years, the Greenleafs' petition could have been dismissed on jurisdictional grounds. *See*, *e.g.*, *Kalmeyer v. Municipality of Penn Hills*, 197 A.3d 1275, 1281 (Pa. Cmwlth. 2018). The Greenleafs would have had to commence a new action for breach of contract. *See id.* Following the award of damages and attorney's fees to the Greenleafs in this action, the trial court
*(Footnote Continued Next Page)*

Order reversed.  Case remanded for further proceedings consistent with this Opinion.

Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  9/4/2024

---

shall ensure the performance of the parties' mutual obligations under the settlement agreement by marking **both** actions as settled and discontinued.

Any future claims based on the parties' settlement agreement and/or Easement Deeds shall be commenced by filing a new lawsuit.  **See** Pa.R.C.P. 1007.  This is especially important here, where several of the original parties are dead, and where the causes of action are no longer equitable in nature, but actions at law with the right to trial by jury.  **See** Note 2, **supra**.